## BOARD OF COUNTY COMMISSIONERS OF SHERIDAN COUNTY v. PATRICK.

### (No. 610.)

HIGHWAYS—COUNTY ROADS—OBSTRUCTION—AUTHORITY OF COUNTY BOARD TO CONSENT TO—PRESCRIPTION—USE OF ROAD OVER VACANT AND UNOCCUPIED LAND—BURDEN OF PROOF—ROAD PLATS AND FIELD NOTES—RECORD OF—EVIDENCE—PRESUMPTION.

1. Where there is no record evidence of any official action of the board of county commissioners in the matter, the mere verbal consent of the individual members of the board is insufficient to authorize a landowner to obstruct a public highway by removing his fence across it to another line.

2. Where land is vacant, and unoccupied, and remains free to public use and travel until circumstances induce the owners to inclose it, the mere travel across it by the public without objection from the owners does not enable the public to acquire a public road over the same, but such use will be regarded as merely permissive and not adverse.

3. There being no statute providing otherwise, it is necessary in order to establish a prescriptive right in the public to a road across wild, uncultivated, unoccupied, open and

uninclosed land, as against the mere silence of the owner, that, in addition to the use of the road by the public, there should be shown the assumption of control and jurisdiction over it by the board of county commissioners for the statutory period of limitation.

4. The burden of proof is upon the county to establish that a road traveled by the public across uninclosed lands had become a public highway by prescription, where it defends on that ground an action brought against it to enjoin it from removing or interfering with a fence built by the plaintiff obstructing the road.

5. The rule that a right cannot be acquired by the public by prescription to a road across vacant and unoccupied lands applies although the land on one side of the road was inclosed, the land on the other side, and that over which the road was traveled remaining open, uninclosed, unoccupied and uncultivated.

6. It appearing that field notes and a plat of a road had been certified as true copies respectively from the records of J. County, and by the county clerk thereof transmitted, as provided by law, to the county clerk of S. County, and kept among the records of the latter county, after its organization by the division of the former county; *Held*, that they were authorized public records, and duly authenticated as such.

7. The field notes and plat of a designated road on record in the county clerk's office are presumptive evidence of the line of the road as officially recognized and controlled, and are admissible in evidence against the county, in an action wherein it seeks to establish the existence of the road by prescription along a route slightly diverging from the line shown by the plat and field notes, where it crosses certain lands.

8. In a suit by a landowner against the county to enjoin interference with a fence built by the former obstructing a road that had been used by the public across his premises while they remained vacant, unoccupied and uninclosed, the county claiming that the public had acquired a right to the road by prescription; *Held*, upon a review of the evidence, that it was insufficient to show that the county board had assumed jurisdiction or control over the road more than ten years before its obstruction, and, therefore, insufficient, notwithstanding the use by the public of the road for 19 years, to establish a highway by prescription.

[Decided November 3, 1909.          (104 Pac. 531.)
Rehearing denied March 14, 1910.]    (107 Pac. 748.)

ERROR to the District Court, Sheridan County, HON. CARROLL H. PARMELEE, Judge.

The action was brought by Algernon S. Patrick against the Board of County Commissioners of Sheridan County, to enjoin the defendant from interfering with a fence built by the plaintiff across a traveled road. The defendant alleged that the road had been used by the public continuously, exclusively, and without interruption, as a public highway, for 20 years; that such use had been open, notorious, peaceable, and adverse to plaintiff and his grantors, and under a claim of right; that during said time plaintiff and his grantors had full knowledge of such use of the road, and that they acquiesced therein; that for more than 17 years the Board of County Commissioners of Sheridan County had exercised control and supervision over the road, and had kept the same in repair as a public highway, with the knowledge of plaintiff and his grantors. Judgment was rendered for the plaintiff, and the defendant brought error. The other material facts are stated in the opinion.

*Charles A. Kutcher,* for plaintiff in error.

The proceedings, if any, leading up to the appointment of viewers to view the "Soldier Creek" road by the Commissioners of Johnson County are not shown by the record in this case, unless the plat introduced in the evidence constitutes such a record. However, viewers laid out a road on the ground following the most practicable route without regard to section lines, according to the testimony of the witness W. M. Curtis. It will appear that the road as traveled through the Patrick place was the most sensible and convenient route, and that was the route subsequently traveled. This seems to confirm the testimony of Mr. Curtis that it was so located. If any presumption is to be indulged in the case, it ought to be that if any road was established by the Commissioners, it was established where located. The public traveled a definite and well defined route, with some deviation at places on account of the

condition of the road in muddy weather. The facts are sufficient to establish the road by prescription, even though the proceedings under which it was located were irregular. (13 Cyc. 480, 485; 22 Ency. Law (2nd Ed.), 1217, 1218, 1222, 1223.) The width of the road established by user is not confined to the actual track, but should be wide enough to make the road practicable. (13 Cyc. 481; Marchard v. Town, &c., 51 N. W. 606; Davis v. City, 10 N. W. 768; Yakima County v. Conrad, 66 Pac. 411.)

The plat and field notes of the road are wholly incompetent, standing alone, to show that the road was ever established on the section line. A public road established by the statutory method can be proved only by the production of the record of the Board showing a legally established road. (R. S. 1887, Secs. 1843, 3863; 15 Ency. Law (2nd Ed.), 387, note 8; People v. Madison Co.; 17 N. E. 802; O'Connell v. Chicago, 56 N. E. 355; Eastland v. Fogo, 16 N. W. 632; Kruger v. LeBlanc, 37 N. W. 880; Whitten v. Clayton, 12 N. E. 513; Lathrop v. Central, &c., 28 N. W. 465; Chaplin v. Highway Com., 22 N. E. 484; Shepard v. Turner, 62 Pac. 106; Heawak v. Sullivan, 79 Pac. 659; Postal v. Martin, 95 N. W. 8; Close v. Swanson, 89 N. W. 1043.) The judgment cannot, therefore, be upheld on the theory that the County Commissioners originally established the road on the section line, since no competent evidence of that fact was given. Neither can it be upheld on the ground that the County Board consented to fencing the old road and opening the new one, because the Board is not permitted to act in such summary manner in the matter of changing roads, and for the reason that no official action was taken by the board as such. The evidence is insufficient to show that any such consent was given, even unofficially. The evidence does not show a mutual mistake as to the location of the road. On the other hand, the evidence is sufficient in every respect to show the establishment of the road by prescription.

(On petition for rehearing.) Although the matter involved in this case is unimportant so far as this particular

road is concerned, the decision is extremely important in its effect upon other county roads. The court will doubt-less take judicial notice of the fact that the early road records were imperfectly kept, and that many county roads must be sustained, if at all, by the doctrine of prescription. We again contend that the plat and field notes cannot be considered as competent evidence of the legal establish-ment of any road along the section line. The only evidence, on the other hand, of any proceeding by the County Board is the testimony of Curtis to the effect that he, as one of the viewers, located the road in 1885 exactly where it was traveled until changed by the defendant in error. Even if the plat and field notes should be considered, the line actually run on the ground would, under the familiar rule as to surveys and boundaries, control in this case. (5 Cyc. 915, note 85.) Moreover, the plat describes a road in range 86 which is six miles west of the road in question. The establishment of a public road can be proved only by the records of the proceedings had by the board rela-tive thereto. There being no record of the proceedings of the Board establishing a road along the section line, the situation presented is that either the county had a road by prescription, where it was laid out in 1885, or it had no road whatever. We think that the County Board as-sumed control over the road for the statutory period neces-sary to establish a road by prescription. The Board treated the road as a county road and kept it open and repaired. In the nature of things, it could not do more. Even under the rule of adverse possession, if the occupant shows that he treated the tract as his own and used it for the pur-poses for which it was reasonably adapted, his possession will be deemed adverse and under a claim of right. (Lang-try v. Parker, 55 N. W. 962; Carpenter v. Coles, 77 N. W. 424.) Suppose the road in question had required no re-pairs. Would it be held under such a state of facts, even though it had been traveled for twenty years as a public road, that no rights by prescription could possibly attach, merely because the assumption of control and jurisdiction

was not evidenced by repairs? Many roads exist which do not require repairs over their entire length. It is not necessary that the road be repaired or worked throughout its entire length. (Gross v. McNutt, 38 Pac. 935.) The road in the case at bar did not run across land altogether vacant upon prairie land. It was completely fenced on one side and followed a well defined track along the fence. This case, therefore, does not come under the rule applied by the court. (O'Connell v. Chicago, &c., 56 N. E. 355; Hartley v. Vermillion, 70 Pac. 273.) Instead of the presumption that the use of the road was permissive, the presumption ought to be that it was adverse upon the facts disclosed in the case. Where there has been actual, continuous and exclusive possession for the statutory period, unexplained, the presumption is raised that the possession is hostile. (Greene v. Anglemire, 77 Mich. 168; Sherry v. Frecking, 4 Duer, 452; Neel v. McElhenny, 69 Pa. St. 300; Morse v. Churchill, 41 Vt. 649; Ill. Steel Co. v. Budzisz, 106 Wis. 499; Meyer v. Hope, 101 Wis. 123; Wilkes v. Elliott, 5 Cranch. (U. S.), 611; 29 Fed. Case No. 17, 660; Metz v. Metz, 48 S. C. 472.)

Patrick's attempt to obtain permission from the Board to change his fence was an acknowledgment that the use of his land was not permissive, but adverse. The witness Curtis surely intended to say that his work was performed under the direction of the supervisors of Johnson County, although he said "Sheridan." His mention of the wrong county was overlooked upon the trial by both the court and counsel, or it would have been corrected, and it seems that his testimony ought not to be disregarded because of the inadvertence of his statement. However, it is immaterial, for it makes no difference whether the witness thought the county was Sheridan or Johnson, so long as he actually laid out and worked the road by the direction of the constituted authorities. It is true that without the testimony of Mr. Curtis no evidence exists of any repairs more than ten years prior to the time Patrick interrupted travel on the road.

No appearance for defendant in error.

SCOTT, JUSTICE.

The defendant in error (plaintiff below) brought this action in the District Court of Sheridan County against the plaintiff in error (defendant below) to enjoin the county from interfering with or removing a fence theretofore constructed by him across a road known as the Soldier Creek road. A temporary injunction was allowed, which upon issue joined and trial thereon was made perpetual. The county brings the case here on error.

It is assigned as error *first*, That the decision and judgment are contrary to law, and, *second*, that the decision and judgment are not sustained by sufficient evidence and are contrary to and against the great weight of the evidence. For convenience these assignments will be considered together.

From the record it appears that as early as 1883 Patrick was and continuously thenceforth has been and is now the owner in fee of Sections 29 and 30 of Township 56 North of Range 86 West of the Sixth Principal Meridian, formerly in Johnson County, but since the time of its organization in 1888, in Sheridan County, Wyoming.

The evidence tended to show that on February 4, 1886, there was filed in the office of the County Clerk of Johnson County a plat and the field notes of the County Surveyor of that county of a survey theretofore made by him of the Soldier Creek road and which plat and field notes show the location of the road as surveyed to be on the north boundary and along the section line of said sections 29 and 30. Owing to the fact that there was a hill or bluff upon the north boundary of section 30, the road as actually followed by the public from the time of such survey until closed by Patrick, diverged to the south of the section lines over and across Patrick's land and around the base of the hill. Patrick's north fence was parallel to, south of and followed the road in its divergence around the hill. The road was a thoroughfare and one of the

main traveled roads from Dayton in said county of Sheridan to the county seat until the spring of 1905, when Patrick, being in ignorance of the true location of the north section line of said sections 29 and 30, procured a survey to be made and discovered that the fence which he supposed had been erected on the section line as well as the road was south of the section line in some places more than 400 feet, and that there was about 15 acres of his land unenclosed and north of the fence. He then tore down his fence, or rather, moved it north and reconstructed it along and parallel with the section line as surveyed and opened a road as originally surveyed on the section line over the bluff which had been avoided by that part of the road which had theretofore crossed his land. The members of the Board of County Commissioners threatened or were about to take official action by causing the fence to be removed from the line of travel as theretofore used by the public under the provisions of Section 1926, R. S., and had notified him officially of their intention to do so, whereupon this action was commenced to enjoin the Board from so doing.

The county did not defend upon the ground of a legally located highway, that is, a highway located under the provisions of the statute, but on the ground that the road had become a lawful public road by user for more than the period of ten years, that being the time limited by statute within which an action for the recovery of real estate may be brought after the cause of action accrues. (Sec. 3451, R. S. Wyo. 1899.)

Patrick claims that when he discovered the true north line of his land by reason of the survey he called at the room where the Board of County Commissioners held their sessions and conversed with the individual members of the Board, and was told by them to move his fence to the section line. There is no record evidence of any official action of the Board in this matter, and that being so, there was no authority vested in Patrick by the verbal consent of the individual members of the Board. (Schwerdtle v.

County of Placer, 108 Cal. 589.) The public could not be deprived of its right, if any, to use the road except by and through the official·acts of the Board, and in the absence of such act, the parties would be left in the same position as though no such consent had been given.

There is no question here raised as to the validity of the road as originally surveyed along the section line. The question presented by the record is, can a road so located be diverted from its original course to and over lands of another, in the absence of dedication by the owner, without official action or the assumption of control by the Board, and by long continued use by the public, become a public or county road? It will be observed that the part of the road here involved, that is, in so far as it run south of the section line across Patrick's land, had been so used by the public for 19 years without objection by him before he moved his fence. The land was wild and unenclosed, and while there is some conflict in the decisions, we are of the opinion that this long period of uninterrupted use by the public was not of itself sufficient to vest title by prescription. The great weight of authority supports this view and is based upon the proposition that such user, in order to ripen into title, must in some way be adverse to occupancy or actual as opposed to constructive possession, under a claim of public right known to the owner. (22 A. & E. Ency. of Law, 1221, 1222..) The record does not disclose, nor is it here contended, that the part of the road involved was the only practical way for a road at that point, so as to bring it within the exception to this rule, but, on the contrary, it shows the travel of a road by the public in that vicinity, since the fence was moved, upon a different line and 'as originally surveyed.

In addition to the use of the road by the public in the absence of a dedication, express or implied, by the owner of the land, other than by his mere silence, assumption of control and jurisdiction over it by the Board of County Commissioners for the period of limitation should be shown. The burden of proof was on the county, to prove its affirm-

ative defense.   Evidence of assumption of control and of
jurisdiction over the road by the public, through its proper
authorities, as by recognition and working the road by
public authority for the required length of time is, we
think, necessary to support the title by prescription.   In
other words, a claim of public right is essential, and such
claim can only be made by the public through its duly
constituted authorities.   (Stewart v. Frink, 94 N. C. 487,
55 Am. Rep. 618.)   Its use would then be under a claim
of right, and if with the knowledge of the owner, would
constitute adverse user.   (Jones v. Bright, 140 Ala. 268;
Gehris v. Fuhrman (Neb.), 94 N. W. Rep. 133; Washing-
ton v. Steiner, 25 Pa. Super. Ct. 392.)   The land in ques-
tion, being unimproved and unenclosed prairie land until
some public authority, acting within its proper sphere, as-
sumed supervision or control of the road or kept it in
repair, the use of it by the public will be deemed to have
been permissive by the owner.   (O'Connell v. Chicago, &c.,
R. Co., 184 Ill. 308, 56 N. E. 355; Watson v. Adams
County, 38 Wash. 662; 22 A. & E. Ency. of Law, 1222.)
Such use, that is to say, use by permission or sufferance,
is not adverse and can not ripen into title, no matter how
long continued.   (Jones v. Bright, *supra;* Hartley v. Ver-
million (Cal. 1902), 70 Pac. Rep. 273; 1 Cyc. 1030; 22
A. & E. Ency. of Law, 1221, 1222, and cases cited in the
footnotes.)

In the case before us, one witness testified that he viewed
and laid out the road in 1885, and that since then there
had been very little divergence from the road as laid out
and that traveled by the public over Patrick's land.   He
further testified that in the following summer, that is in
1886, he worked on that part of the road which was closed
by the fence, and that he so worked under the direction
of the road supervisors of Sheridan County.   This court
takes judicial notice of the fact, as the trial court undoubt-
edly did, that Sheridan County was unorganized untill 1888.
The witness was undoubtedly mistaken, but his evidence
stands in the record uncontradicted.   We know judicially

that Sheridan County was a part of Johnson County at that time, and it may be that the witness meant to say Johnson instead of Sheridan, but we cannot go beyond the record nor read into it something which is not there. His evidence could, therefore, have been of no value to the trial court in fixing any time when the public, through their constituted authorities, if they ever did so, assumed control of the road. The only evidence in the record of repairs to or the assumption of control over this road by any public authority relates to work performed more than ten years thereafter, and within ten years prior to the time when Patrick moved his fence, and by so doing interrupted the running of the statute. (Rollman v. Erurich, 122 Wis. 134; Gehris v. Fuhrman, *supra;* Coward v. Llewellyn, 209 Pa. St. 582; Washington v. Steiner, *supra;* Ft. Worth v. Cetti (Tex. Civ. App., 1905), 85 S. W. Rep. 826.) It follows that the title or the right to maintain the road had not accrued by prescription. The judgment will be affirmed.

*Affirmed.*

POTTER, C. J., and BEARD, J., concur.

### ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

This case was brought to enjoin the county from inter-. fering with a fence built by plaintiff across a traveled road claimed by. the county to be a public highway. For the reasons stated in the former opinion, the judgment in favor of the plaintiff was affirmed. (104 Pac. 531.) A petition for rehearing has been filed on behalf of the plaintiff in error, the Board of County Commissioners. It seems to be supposed that the principle upon which the case was decided will tend' to confusion in the matter of public roads, and interfere with other roads in a similar situation, and it is stated in the brief in support of the petition for rehearing that this case is unimportant so far as it affects the particular road in controversy, but that it was brought or allowed to be brought as a test case to have settled the

rule in this State concerning the existence of a public highway by prescription. We do not think that the serious unfortunate consequences anticipated by counsel will necessarily result from the decision heretofore announced. If such results are possible, it is a matter easily remedied by the Legislature if deemed proper. We must declare the law as it stands, leaving the Legislature to make such changes as conditions may seem to require. The rule that where land is vacant and unoccupied and remains free to public use and travel until circumstances induce the owners to inclose it, the mere travel across it by the public without objection from the owner does not enable the public to acquire a public road over the same, but that such use will be regarded as merely permissive and not adverse, is a rule which, as said in a Washington case cited in the former opinion, seems to be well settled. (Watson v. Board, &c., 80 Pac. 201.) It is unnecessary to rehearse the reasons upon which the rule is founded.

We think it is a fact that in the earlier days of the settlement of this particular section of country it was not unusual for fences to be constructed without strict regard to boundary lines or corners, and that, in addition to public lands, it was not uncommon for land which had passed into private ownership to remain open and uninclosed. Public travel according to convenience across such uninclosed lands, was unobstructed. There has never existed in this State a statute to the effect that the mere use of a road by the public may ripen into a title or right thereto by prescription, but in some states there is such a statute, which is held to qualify the common law rule. (State v. Auchard (Mont.), 55 Pac. 361; Township of Madison v. Gallagher, 159 Ill. 105.) In the case last cited it was said: "Where the statute expressly says that use of the road as a highway by the public for a certain number of years makes it a public highway, we cannot see why such use is not evidence of as high a character as are acts of recognition by the town authorities." And again: "Under such a statute the continued and uninterrupted use * * * for the statutory

period must, in the absence of proof to the contrary, be presumed to have been under a claim of right." The same liberality has not been shown by our Legislature in favor of a right by prescription to a public highway. Until 1877, the only statute respecting the matter was one enacted in 1869 by the first territorial legislature, which provided as follows: "All roads within this Territory shall be considered public highways, which have been, or may hereafter be, declared Territorial roads by act of the Legislative Assembly, or which have been or may be, declared public roads by the Board of County Commissioners of any county, within such county, or which have been, or shall hereafter be, used and traveled by the public, so that the same would, *according to the course of the common law,* be deemed public highways." (Comp. L. 1876, Ch. 102, Sec. 1.)

In 1877 an act was passed providing: "That the Board of County Commissioners of the several counties of the Territory of Wyoming shall have power to adopt, and by resolution entered of record, appropriate to county and public uses any road or route publicly traveled, within their respective counties, whether originally opened and laid out by them or not, and any road so adopted and appropriated to public purposes shall be and is hereby declared a public or county road to all intents and purposes, the same as if originally opened or laid out by them and subject to the same laws and regulations in all respects." Section 2 of that act required a record to be kept of all such proceedings, with a description of the road, for the information of the public, and to be open to public inspection. (Laws 1877, p. 135.) That act continued in force until repealed by an act approved March 12, 1886, whereby it was provided that all county roads shall be under the supervision of the Board of County Commissioners of the county wherein the road is located, and "no county road shall be hereafter established, nor any such road be altered or vacated in any county in this Territory except by authority of the County Commissioners of the proper county." (Laws

1886, Ch. 99, Sec. 1; Rev. Stat. 1887, Sec. 3859.) In 1895 an act was passed "to revise, amend and consolidate the statutes relating to highways and bridges." (Laws 1895, Ch. 69.) Sections 1 and 2 of that act were as follows:

"Section 1.    All roads within this State shall be public highways which have been or may be declared by law to be national, state, territorial or county roads.    All roads that have been designated or marked as highways on government maps or plats in the record of any land office of the United States within this State, and which have been publicly used as traveled highways, and which have not been closed or vacated by order of the Board of the County Commissioners of the county wherein the same are located, are declared to be public highways until the same are closed or vacated by order of the Board of County Commissioners of the county wherein the same are located, and the board or officer charged by law with such duty shall keep the same open and in repair the same as in the case of roads regularly laid out and opened by order of the Board of the County Commissioners."

"Sec. 2.    All county roads shall be under the supervision, management and control of the Board of County Commissioners of the county wherein such roads are located, and no county road shall hereafter be established, altered or vacated in any county in this State, except by the authority of the Board of the County Commissioners of the county wherein such road is located, except as in this act provided."

Thus the only publicly traveled roads, not officially established, declared to be public highways, were those designated as highways on government maps or plats in the record of a land office of the United States in this State. By the act of 1895 several former acts were repealed, including a chapter relating to roads passed in 1891, and one enacted in 1890.  By the act of 1890 it had been provided in one section substantially as by the act of 1886, and, in another section, that public roads might be established without other proceedings than an order of the County

Board, upon the filing of the written consent of all the owners of the land to be used for that purpose. The act of 1891 also contained provisions like those found in the act of 1886, and in section 2 of the act of 1895, preceded by the provision that "all roads within this State shall be considered public highways, which have been or may be declared by law to be State, Territorial or county roads." Sections 1 and 2 of the act of 1895 were brought into the revision of the statutes of 1899, and seem to have remained in force without material change. (Rev. Stat. 1899, Secs. 1906 and 1907.)

Upon a review of these statutes it cannot fail to be observed that there is a very significant omission of the provision found in some other States that a road shall be deemed a public highway from the fact alone that it has been publicly traveled as such for a certain number of years. With all the legislation on the subject, had such a purpose been intended, it would, we think, have been clearly expressed. We are left, therefore, to ascertain outside the statute the circumstances which can be held to show that the public travel of a road has been under a claim of right adverse to the owner of the land. Owing to the conditions that have existed in this State, and continue to exist, we are of the opinion that the only reasonable rule, in the absence of a statute to the contrary, is, as stated in the former opinion, that to establish a prescriptive right as against the mere silence of the owner of wild, uncultivated, unoccupied, open and uninclosed land, there should be shown, in addition to the use of a road by the public, the assumption of control and jurisdiction over it by the board of county commissioners for the statutory period of limitation. It is evident that where, as in this state, a large proportion of the lands remain open and uncultivated, the public will freely travel across the same merely as a matter of convenience and not necessarily with a purpose or thought of claiming a right adverse to the owner or owners, although a well defined road may in many instances result from such travel. We think the legislature must have had

these conditions in mind, and therefore refrained from providing that such use, however long continued, independent of official action, would be presumed to have been adverse or sufficient to make the route traveled a public highway.

It is contended, however, that the land in question did not come within the rule above stated for the reason that the land south of the traveled road was fenced. That fact, no doubt prevented the public from traveling over the inclosed land, but the land over which the public did travel, as well as the land north of it, was open and uninclosed, unoccupied and uncultivated, and the case therefore comes clearly within the rule.

It is argued that the court seems to have misapprehended the point in controversy, because it is stated in the former opinion that no question is raised as to the validity of the road as originally surveyed along the section line, and that the question presented is whether a road so located can be diverted from its original course to and over lands of another in the absence of dedication by the owner without official action or the assumption of control by the county board, and merely by long continued use by the public become a public or county road. The question to be decided may not have been accurately stated, but the point was not misapprehended. Whatever inaccuracy there may have been in the statement of the question did not change the situation, nor would a more accurate statement lead to a different result. It may be immaterial whether the road as surveyed along the section line was or was not legally located and established, except so far as it might tend to show the route over which .the county board claimed or exercised control and jurisdiction. The right, if any, acquired by the public to use the road in question is quite independent of the legality of the proceedings for locating a road along the section line, or of the question whether any such proceedings were had. But as will be explained later, the evidence relating to such a road becomes important in determining the effect of

the travel south of the section line over the lands of the defendant in error.

By the statement that no question was here raised as to the validity of the road as surveyed on the section line, it was intended that the validity or legal existence of that road was not a question to be decided in this case, and we repeat that it is not. That road is being traveled without objection or obstruction, as the evidence shows, and had been for two years prior to the trial. The plaintiff below, defendant in error here, was not complaining of such travel. He had obstructed the road as previously traveled, and sued to restrain the county from interfering with such obstruction, and the county's right in the case depended upon its showing that the road so obstructed was a public road. It is true that it appeared that a plat and field notes were on record showing a road along the section line, and plaintiff considered that to be the correct location of the road as originally located, and built his fence accordingly. The defendant county insisted that the road had never been located along the section line, and sought to prove that it had been located, traveled and controlled over the defendant's land around a hill a short distance south of the section line; though it did not attempt to show the record proceedings, if any, so locating it. On the contrary, as stated in the former opinion, the county relied upon a right by prescription. There might have been two public roads, one legally established along the section line, and one through its use by the public and control by the county board for the period sufficient to give a right by prescription.

Although the question to be decided in this case is not the validity or invalidity of a road along the section line, the field notes and map introduced in evidence from the county records are important, and were properly admitted in evidence. Counsel for plaintiff in error states in his brief that such field notes and plat are unsigned and unauthenticated, that no one pretends to say where they came from, who made them, or how they came into the Clerk's office. It is true that by what particular person they were

made and how they came into the office of the County
Clerk of Johnson County does not expressly appear by the
evidence; but it does appear that they were on record
in that office, and, as provided by law, were transcribed
therefrom and transmitted to the County Clerk's office
in Sheridan County after that county was organized. They
are authorized public records, and appear to be duly au-
thenticated as such. (Comp. L. 1876, Ch. 102; Id. Ch.
28, Art. 7; Rev. Stat. 1887, Secs. 1890-1892, 3863; Rev.
Stat. 1899, Secs. 1916, 1156, 1185-1187.)

The Deputy County Clerk of Sheridan County, testify-
ing as a witness upon the trial, produced from the Clerk's
office a record book of the roads in Sheridan County,
in which he testified he found at a certain page a road
called "Soldier Creek Road"; that a part of it had been
amended by the County Commissioners, but not that part
here in controversy. He stated further that he had the
transcript papers from Johnson County of which the rec-
ord was a copy. He produced them, saying: "This is the
plat as transcribed from the records of Johnson County.
These are the field notes of the same road transcribed
from Johnson County. The field notes in starting com-
menced at Section 24, Township 56, Range 85, that is the
beginning of the road."

The plat so produced has endorsed upon it a certificate
dated Feb. 4, 1886, purporting to be signed by the County
Surveyor of Johnson County stating that it is a true copy
of the map of the Soldier Creek road on file in his office,
and also a slip attached containing a certificate signed by
the County Clerk of Johnson County, dated June 14, 1889,
that it is a true and correct copy as the same appears of
record in his office. Upon such certificate and passing
through the map is an impression of the county seal of
Johnson County authenticating the same. The field notes
are entitled: "Field notes of Soldier Creek Road." At-
tached thereto is a certificate of the County Clerk of John-
son County similar to that on the map, and of the same date,
with an impression of the county seal upon the slip upon

which the certificate is written and the paper containing the field notes. A number-111 is stamped upon the back.

The map, evidently through a clerical mistake, gives the range at the point covered by the road in controversy as 86, instead of 85, but in pencil above the figures 86 is written 85, but by whom so written is not disclosed. The true range in which the land and road involved are located is 85, and not 86, as inadvertently stated in the previous opinion. We say that the difference in the range number was evidently a mistake, for the reason that in the field notes the range is given as 85, and it is not claimed that they and the map disagree in any other respect. The road here in dispute was referred to upon the trial by counsel and witnesses as a part of the Soldier Creek road; and it appears that from the east and west ends of the strip in controversy running easterly and westerly, respectively, the line of the road as traveled is the same as shown on the map and by the field notes. The field notes and map show a continuation of the road across or adjacent to the land of defendant in error along the north line of Sections 29 and 30. The divergence from that line of the road as traveled before it was obstructed by the defendant in error is not great. It appears to have run "around a hill," as stated in the testimony. It leaves the section line in the northwest quarter of the northeast quarter of Section 29, and connects with it again in the northwest quarter of the northeast quarter of Section 30. The distance between the center of the road so traveled and the section line varies from a few feet at either end to about 400 feet at a point near the line dividing Sections 29 and 30. It appears that the traveled portion of the road was at least seventy or seventy-five feet wide, and some of the witnesses say that it was 100 to 150 feet wide in places, which would bring one side of it close to, if not touching, the section line, or the line shown on the map. Referring to the rule applicable to a road across land situated as the Patrick land was, it was necessary for the county to show some official control or recognition

of the road in controversy, in addition to the fact that it
was used by the public, in order to establish a right by
prescription.   As stated in the former opinion, it was at-
tempted on the part of the county to make such showing.   It
was competent for the defendant in error, plaintiff below,
to show that the county records described a road along the
section line, not for the purpose merely of proving the
legal location of a road there, because that in itself might
be immaterial.   But owing to the proximity of the traveled
road and the section line, together with the fact that the
road here sought to be maintained connected at each end
with the road shown by the map and field notes, and was
a part of that road as traveled, the records, that is to say,
the map and field notes would, in the absence of evidence
to the contrary, presumptively show the line of the road
as officially recognized and controlled, and tended to ex-
plain, in connection with the other facts, the use by the
public of the land of Patrick along the north side of his
fence.

It is unnecessary to here decide whether that record,
without proof of any other proceedings, would be sufficient
to establish the legal location and existence of the road
so described.   As the map and field notes had been on
the records for more than 20 years, and the road described
thereby, with the exception of the strip along the land of
defendant in error, had been for the same period publicly
traveled as one of the principal roads in the county, there
might perhaps be some ground for the presumption that
it had been legally established.   (See Town of Randall v.
Rovelstad, 105 Wis. 410;  Olwell v. Travis, (Wis.) 123
N. W. 111.)   But the county was permitted by the trial
court to show by the witness, Curtis, whose testimony is
referred to in the former opinion, that he was one of the
viewers and locators of the Soldier Creek road, and, not-
withstanding that he testified that the viewers had made
a written report, he was further permitted to state that
where the road ran at the Patrick place, it was located
and opened on the line subsequently traveled.   He says

that it was viewed and located in the spring of 1885 or 1886, and that it was opened in the following summer by laying it out and putting in culverts. He testified further that the question of section lines was not mentioned when the road was located, and that they (the viewers) did not know where the section line was. Thus we have in the evidence the fact testified to by a witness for the county, and brought out on his direct examination, that the Soldier Creek road was located by viewers, and afterwards opened at a time corresponding closely with the date of the County Surveyor's certificate upon the map; and by that testimony, as well as the testimony of the other witnesses such road was thereafter continuously traveled by the public over the route shown by the map and field notes, with the single exception of the slight deviation at the place in controversy. In view of all the evidence, the court could properly have found that a road called the "Soldier Creek" road had been located and opened to travel by public authority, and would have been justified in accepting the map and field notes as not only the best but the most reliable evidence as to where the road was officially located. It should be stated that neither Mr. Curtis nor any other witness testified that the road when located and opened was marked or designated on the ground by stakes, the plowing of furrows, or in any other manner. The fact that at the Patrick place the public did not travel along the section line, but along a road deviating slightly therefrom tended of course to corroborate Mr. Curtis, but its effect would be overcome to some extent, if not altogether, by the consideration that as the land was vacant and uninclosed, the route traveled may have been used by the public as a mere matter of convenience, regardless of the true line of the road as located and surveyed, especially in view of the showing made by the road record.

It appears that in October, 1907, the County Surveyor of Sheridan County made a written report to the county board, at the request of a member thereof, concerning the ques-

tion whether Mr. Patrick had built a fence (the one in question) across the county road, and in that report it was stated that the road then being used was on the section line; that according to the map and field notes of the road it was not located south of such line; and therefore it had not been obstructed. Thus it appears that the record was regarded by the County Surveyor as showing the true location of the road. The testimony of Mr. Curtis that the road was originally located along the course taken by the public travel, and not on the section line, disagrees with the only record evidence in the case and is unsupported by the record of any official act in that regard. What he says, therefore, with reference to the original laying out of the road must be disregarded in ascertaining the extent, if any, to which the traveled road was officially recognized or controlled. He is the only witness who testifies to any work upon the road ten years or more before it was obstructed by the defendant in error.

In other respects than that mentioned in the former opinion, we regard the testimony of Mr. Curtis as insufficient to show any recognition or control by any Board of County Commissioners of the road as traveled through the Patrick ranch at the time he claims to have worked upon it, viz: in 1885 or 1886. In the first place his work at that time was confined to putting in a culvert at the northeast end and grading the road down on each side of the culvert. The northeast end was where this traveled road connected with the section line, or the road as surveyed according to the map and field notes, and it is not clear that any of the work referred to was south of the section line, or upon the road inclosed by the fence of defendant in error. Again it is left quite uncertain whether the Road Supervisor under whom he was working at the time gave any directions with special reference to that portion of the road running through the Patrick land. The witness was asked, when speaking of his work in 1885, if he was referring to the old Soldier Creek road running through the Patrick place, which he answered in the affirmative, and

then being asked under whose direction he worked upon it, he said: "Working for the Road Supervisors of Sheridan County." That was followed by this question and answer: "Q. Were you paid for this work that you did?" "A. I put in culverts and graded it whenever it was necessary." That is all of his testimony relating to his authority for working on the road.

In 1885, the statute provided for the division of each county into road districts, and the appointment by the county board of a road overseer in each district, who was given charge of all roads in his district under the direction of the Board of County Commissioners. (Laws 1882, Ch. 89.) The act of 1886 provided for a Road Supervisor, with authority to open, or cause to be opened, all roads that may have been, or shall be, laid out and established according to law, in any part of his district, and to keep the same in good repair. (Laws 1886, Ch. 99.) If it may be assumed that the overseer or supervisor, in regard to the work performed by Mr. Curtis, was engaged in carrying out the directions of the county board, we fail to find anything in the evidence as to the work done in 1885 or 1886, showing official recognition or knowledge of any part of the Soldier Creek road that deviated from the line defined upon the map by the field notes of that road. It was the duty of the county to show by satisfactory evidence some recognition or control by the proper county authorities of the traveled road in controversy covering a period of at least ten years before the obstruction of the road, in order to establish a right in the public by prescription. This, in our opinion, it failed to do, even if the testimony of Mr. Curtis should be understood as stating that he was working at the time mentioned for the Road Supervisor of Johnson instead of Sheridan County. We need not, therefore, reconsider whether it is proper to construe his testimony in that particular literally. The application for rehearing will be denied.

BEARD, J., and SCOTT, J., concur.