W. L. CHALLISS v. A. T. & SANTA FE RAILROAD CO.

1. TITLE OF RAILROAD COMPANY, *to Lands Acquired for Right of Way.* The title acquired by railroad companies in condemnation proceedings, under chapter 124 of the laws of 1864, was an absolute title in fee simple, and not a mere easement.

2. ———— *Legislative Power; Ch. 124, Laws of 1864.* Said chapter 124 is constitutional; for in the exercise of its power to devote private property to public use, the legislature is the exclusive judge of the degree and quality of interest which are proper to be taken, as well as of the necessity of taking it.

3. CONSTITUTIONAL LAW; *Words Construed.* Sec. 4 of art. 12 of the constitution is not a grant of power to appropriate private property to public use, but a restriction upon the exercise of such power; and the term therein used, "right of way," is not used as defining the quantity of estate to be appropriated, but as meaning the right of passage, irrespective of the estate or title to be acquired.

4. CONDEMNATION PROCEEDINGS; *Compliance with Statute; Title.* Where in condemnation proceedings under said law of 1864, the full legal notice was given, the affidavit of publication filed in the county clerk's office correct, and showing due and legal publication, the subsequent proceedings all regular, except that in copying into the record in the office of register of deeds the proof of publication a clerical mistake was made by which the first publication was made to have been on the 28th instead of the 25th, and so less than thirty days before the time fixed for the meeting of the commissioners, and where the damages awarded to the owner of a certain tract were paid to and accepted by him, and the road actually constructed and in operation through his land, although only a strip of about twenty feet in width was actually occupied by the railroad company, and the balance of the hundred-feet strip condemned was used by the · previous owner for the same purposes as the remainder of his tract, and where after such condemnation proceedings and payment and receipt of damages, and during such occupation by said railroad company, said owner sells and conveys the entire tract by warranty deed: *Held,* That the purchaser acquires no title to any portion of the one hundred-feet strip.

## *Error from Atchison District Court.*

PRIOR to and during the year 1864 one M. Yocum owned and occupied a certain quarter-section of land in Atchison county, one J. S. Yocum a certain eighty-acre tract, and one J. W. Baldwin a certain twenty-two acre tract. Through these tracts the right of way, one hundred feet wide, was laid off and condemned for the Atchison & Pike's Peak Railroad, was paid for, and the railroad constructed, as stated in the opinion, *infra.* Challiss purchased said three tracts of land from the Yocums and Baldwin in 1868 and 1869, taking general warranty deeds. In March 1872, upon due proceedings being had, upon the application of the *Atchison, Topeka & Santa Fe Railroad Company*, commissioners were duly appointed for the purpose and laid off a railroad route for said *A. T. & S. F. Rld. Co.* through Atchison county. Their report shows that they took from one of the three tracts of land above mentioned nearly three acres, from another nearly one acre, and also a strip of land from the 22-acre tract embracing forty feet. The land so taken and condemned for the *A. T. & S. F. Rld. Co. lies within the right*

*of way taken and condemned in 1864* for the Atchison & Pike's Peak Railroad Company, and is a portion of the right of way of the said A. & P. P. railroad, now the Central Br. U. P. railroad. In May 1872, Challiss claimed that he had an interest in the property lying within the right of way condemned for the Atchison & Pike's Peak Railroad, and again taken and condemned for the *A. T. & Santa Fe Railroad Co.*, and he appealed from the determination of the said commissioners to the district court of Atchison county, upon the ground that the act of the legislature of March 1st 1864, (ch. 124, laws of 1864, p. 236,) relating to the mode by which railroad companies may acquire title to lands, was unconstitutional and void, and that under said act no proceedings could vest in a railroad company the title *in fee simple* to the land set apart and condemned for a right of way. The theory of Challiss' appeal, is set forth in the following instruction which was asked by him in the court below, and which was refused, namely:

"The jury are instructed that in 1864 and 1865 no valid· law for the condemnation of land for the use of railroads · then existed; and·that said railroad (meaning the Atchison & Pike's Peak Railroad Co.) could not acquire any interest in said lands by virtue of the provisions of the act of 1864, further than the license to use such lands for its own purposes, after payment of damages therefor to the satisfaction of the other owner."

Trial at the March Term 1874 of the district court. Verdict and judgment for defendant, and *Challiss* brings the case here on error.

*W. W. Guthrie*, for plaintiff in error:

It was shown on the trial that Challiss ·had bought these tracts of land after the C. B. U. P. railroad had been built, and under *warranty deeds and covenants of full title;* that said C. B. U. P. railroad only had a single track, and Challiss occupied and cultivated his field on either side, less about 20 feet occupied by the railroad. That the location of defendant's road was eight feet from and one foot lower than the

former road, and compelled plaintiff to abandon a part of his field in crop season, destroyed his farm crossings, and otherwise burdened the use of his farm, producing great damages to his *entire tract* in addition to the loss of the land taken by defendant, in all some $1,200. Challiss as a purchaser had actual notice of claim of C. B. U. P. railroad only to the extent used, and only constructive notice as shown by records in the register's office at time of purchase. Besides this, no title as against such purchaser could be acquired under the act of 1864.

The condemnation proceedings were recorded in two sections, one filed October 9th 1864, in the county clerk's office, the other March 16th 1865; but this last was not dated till *March 17th.* The notice was for September 26th 1864, and the publication was recorded *as made from "August 28th to September 29th,"* and so stood until January 26th 1874, when the first date was changed to *August 25th,* on the margin of the record.

The court erred in instructing the jury, "that such records, with the testimony of witnesses, constituted a valid condemnation for a 100-feet strip"—thus instructing the jury that plaintiff had acquired *no title* by his purchase to any part of the 100-feet strip claimed by the C. B. U. P. Rld. Co. under such condemnation proceedings. Or, in other words, that this strip of 100 feet in width through the middle of plaintiff's 700-acre tract, taken under condemnation for "right of way" for a railroad, had become *in allodium* the property of such railroad company, and as such, thereafter to use in any manner and for any purpose desired.

1. On the questions presented in the record, the plaintiff in error submits: That a railroad corporation has not power under any law to take for "right of way" any other interest in lands than an *easement.* The right to appropriate private property for public use has always been limited to the actual necessities of such use. And the necessity which in one case will authorize the taking of an entire tract for a municipal alms-house in allodial title, will not in another case author-

ize the taking of a narrow strip out of a large tract for a "right of way" for the road of a private corporation. Neither reason nor necessity allows such a rule, nor is it asserted in *Heyward v. The Mayor, &c.,* 7 N. Y. 314, but is expressly denied. (Cooley Const. Lim. 533; 4 Ohio St. 308, 324; 1 Redf. Rld. Law, 250, 257, and notes; 50 Mo. 243.) But it is claimed that the C. B. U. P. Rld. Co. had the right to acquire the title to this 100-feet strip because its necessities for right of way so required, and afterward, by involuntary sale, to convey a part of it to defendant for a like use, or to an individual for any use such individual might desire; that is, that the power of eminent domain gives to a railroad corporation the right to acquire *land under claim of right of way* to hold and resell on speculation, and that such right is only limited by the greed of its corporators, and their ability to pay. We say the limit is the necessity for actual use, and that such use must be personal to the party taking. Private corporations do not take unusual powers by implication.

2. Any attempt at such legislation would be unconstitutional. Such an idea does not exist in the history of *private* corporations for the construction of road-ways; and, in this state, the appropriation of the *land* is not authorized — only the *right of way* — and thereby, by implication, the right beyond an *easement* is denied. Sec. 4, art. 12, constitution.

3. Nor is such a construction of § 4 of the act of 1864 authorized. All that such language implies is, "that such company shall thereafter have the full right *to use* such land for the purpose of a route for *its* railroad, or to whoever *such line of railroad* might be transferred." In other words, the *condemnation of the right of way* for the railroad of *that* company or its successor, was alone authorized. And under the act of February 13th 1865, (Laws of 1865, p. 94, §§ 15 and 26,) the power to acquire lands is granted only to the extent of "right of way," and "those granted to aid in construction of such roads." This act of 1865 was the first general act authorizing incorporation of railroad companies, and it makes the difference in tenure of lands, held in *Land v. Coffman,* 50

9—16 KAS.

Mo. 243. (And see 12 N. Y. 121; 2 Iowa, 302; 31 Me. 217; 3 Vt. 393.)

4. Challiss' land was subjected to an additional burden; and therefor he was entitled to recover damages against defendant, which had imposed such burden; and it was error to refuse his instructions asked on this point: *Mifflin v. Railroad Co.*, 16 Penn. St. 182, 190; *Blake v. Rich*, 34 N. H. 282; *Imlay v. Railroad Co.*, 26 Conn. 249, 253. Defendant was an independent organization, with its road at a different grade, which destroyed plaintiff's farm crossings, thus doing him a special damage.

5. The proceedings of the C. B. U. P. Rld. Co. were only valid when recorded in the office of register of deeds; (§ 4, acts of 1864;) and only *as recorded*, were notice to plaintiff as the purchaser of these lands. As recorded, "they were so irregular that no rights could be founded upon them." *Akin v. Davis*, 11 Kas. 580, 592; *Ellis v. Pacific Rld. Co.*, 51 Mo. 200. There was neither 30 days' notice, nor recording within 10 days.

6. The acceptance by the plaintiff's grantors of damages under such proceedings would only operate as *a license* to the C. B. U. P. Rld. Co., and possession thereunder would be notice to a subsequent purchaser only to extent of *actual occupancy*. The rule which applies in case of possession under an unrecorded deed does not apply to possession under a mere license. And plaintiff was entitled to recover damages for the strip taken, under the general rule of *full compensation*.

7. The publication notice as found of record in the register of deeds' office, could not be impeached as against a *bona fide* purchaser. Nor was the original report evidence, where the record in the register's office existed. Nor of the proceedings had in the treasurer's office on such report; at least, until its loss had been shown. The payment of damages by defendant in error to the C. B. U. P. Rld. Co. was no evidence in Challiss' action to recover damages; if this was his land, such payment would not defeat his claim; and if not his, then he failed in his case.

*Horton & Waggener,* for defendant in error:

The A. & P. P. Rld. Co. acquired title in *fee simple* for itself and its successors and assigns of the lands now claimed by Challiss under the condemnation proceedings had in accordance with ch. 124, Laws of 1864. Said act of 1864 is constitutional, and vested a fee-simple title in railroad companies which proceeded under its provisions. Laws of 1864, pp. 236, 238; 3 Paige's Ch. 45 to 76; 1 Kernan, 308; 2 id. 190; *Peoria & R. I. Rld. Co. v. Birkett,* 62 Ill. 332; *State v. Rives,* 5 Iredell, 397; *Heyward v. Mayor of N. Y.,* 3 Selden, 314; *Moore v. City of New York,* 4 Sandford, 456; *Nicoll v. N. Y. & Erie Rld. Co.,* 12 N. Y. 121. The right of the legislature, in the absence of a constitutional restriction to that effect, to condemn the fee for the purposes of a railroad, cannot be well questioned. It is not less a legislative function to determine what estate in point of duration the public exigency requires to be condemned, than to determine the existence of the public exigency which requires the condemnation of any estate. 2 Dev. & Bat. 467; Pierce on Am. Rld. Law, 161.

The quantity of estate in land taken by condemnation for acquisition of right of way which is vested in railroad companies is not uniform in all states. In Illinois some of the charters vest the fee simple in the company, while others provide that the company is merely authorized to enter upon and take possession of and use the land. In North Carolina the fee simple is vested in the company. In New Hampshire and Iowa, and some other States, railroads have only an easement in the land, and do not hold the estate in fee simple. Pierce Am. Rld. Law, 160, 161; 5 Iredell, 307; 3 Selden, 314; 4 Sandf. 456. In 1864, the legislature of the state of Kansas provided that railroad companies could acquire title in fee simple to lands, and in so doing exercised a right which cannot be at this date well questioned. In *De Varaigne v. Fox,* 2 Blatchf. 95, it was held that where the statute conferred the right to take the *fee* of land, and it was taken

upon compensation accordingly, the court will not construe the grant a conditional fee or usufruct, leaving a possible reverter to the original proprietor, but will regard the entire property as vested in the grantee forever. In the present case the county commissioners understood when they were condemning the lands of the grantors of the plaintiff in 1864 and 1865, that the railroad company were to have the title in fee simple to the lands set apart for the right of way, and must necessarily in their appraisement of the value of the lands taken, and in their assessment of damages therefor, have given to said grantors full compensation for the land taken *in fee;* and the grantors of the plaintiff must have accepted the moneys so paid to them in 1865 and 1866, in full satisfaction of the estate *in fee* for the lands so set apart and appropriated for said company. And it would seem, upon general principles, that the grantors of Challiss should be estopped from claiming any interest in the land after having received compensation therefor with the understanding that they had transferred to the said railroad company fee-simple title for the same. If his grantors are estopped from claiming any interest in the land after having accepted the payment of the awards made, then of course Challiss could have no better claim or interest in said lands than his grantors. An acceptance of the amount of the value of the land, whether by taking the amount agreed upon by the parties, or fixed by the commissioners, or the court, is an acquiescence in the taking of the land as much as if the owner had conveyed the same lands to the railroad company by deed. 9 Wis. 450 to 485.

The plaintiff, at the time he obtained his deed of the Yocums and Baldwin, could have ascertained from the records in the clerk's office in Atchison county that due proceedings had been taken to have the premises mentioned in said report condemned under the law of 1864, and that a strip of land 100 feet in width had been appropriated for the right of way of the railroad company; and the records in the register's office showed that the moneys for such right of way

had been deposited with the county treasurer, or paid to the owners thereof; and upon inquiry the plaintiff could have ascertained without any .difficulty that his grantors had received full payment for the fee of the said 100 feet of land so appropriated for said right of way. And in addition to this record notice, the said A. & P. P. Rld. Co., now called the Central Branch U. P. Rld. Co., was running and operating its road over and upon the said right of way at the time of plaintiff's purchase. In view then of the public records of the condemnation proceedings had for said right of way, and of the possession of such right of way by said railroad at the date of the purchase under which plaintiff claims, the plaintiff had full and complete notice of the title of the said railroad company to the lands which he was about to purchase. The original report of condemnation of 1864 and 1865, on file in the office of the county clerk was presented in evidence. The register's books, showing the same to have been duly recorded, with the exception that in the proof of notice of publication, the register had recorded 8 for 5, was also introduced. The fact that the register of deeds had copied August "28th," for August "25th," and that such record remained unchanged until January 26th 1874, could not have really prejudiced the rights of the plaintiff. The register's office showed that payment of the assessment damages by the railroad company, and the original papers on file in the office of the county clerk showed that notice of condemnation proceedings had been published for 30 days; and the records of the county clerk's office are as much public records as are the records in the office of the register of deeds. These facts, and the further fact that the railroad company was operating its road, not only put plaintiff upon inquiry as to the title of the said company, but gave him actual knowledge of the fact that 100 feet had been duly condemned through the parcels of land he was buying, and that the railroad company had paid the money for a title in fee therefor.

The opinion of the court was delivered by

BREWER, J.: In 1864-5 the A. & P. P. Railroad Co. instituted condemnation proceedings, under the law of 1864, to obtain the right of way through certain tracts of land in Atchison county. And the two principal questions in this case are as to the validity of those proceedings, and as to the quantity of title transferred by them, if valid, to the railroad company.

We will consider the latter question first. Chap. 124 of the laws of 1864, entitled "An act to enable railroad companies to acquire title to lands for railroad purposes," prescribes the steps to be pursued in these condemnation proceedings; 1. Title to lands acquired for right of way. and in § 4 it is provided that, "to such portions of such road * * * title in fee simple shall vest in such company, its successors and assigns." This language is plain, and susceptible of but one construction. The clear intent of the legislature was, that the railroad companies should acquire a perfect and absolute estate, and not simply an easement. This being the clear meaning of the statute, the power of the legislature to enact it is challenged. It is said that "the right to appropriate private property for public use has always been limited to the actual necessities of such use," and that an easement is all that is necessary to secure to the railroad company the fullest possible enjoyment of the land for its purposes. All this may be true; but the question of the necessity is one for the legislature, and not for the courts. It is said by Cooley in his work on Consti- 2. Legislative power; constitutional law. tutional Limitations, p. 558, that, "It seems, however, to be competent for the state to appropriate the title to the land in fee, and so to altogether exclude any use by the former owner, except that which every individual citizen is entitled to make, if in the opinion of the legislature it is needful that the fee be taken." True, in a note he says, "We think it would be difficult to demonstrate the necessity for appropriating the fee in case of any thoroughfare; and if never needful, it ought to be held incompe-

tent." But notwithstanding this suggestion in the note, we think the doctrine of the text fully sustained by the authorities. *Moore v. City of New York*, 4 Sandf. 456; *Heyward v. Mayor of New York*, 3 Seld. 314; *Reesford v. Knight*, 1 Kernan, 308; *Beekman v. S. & S. Rld. Co.*, 3 Paige, 75; Pierce on Am. Rld. Law, 161; *Halderman v. Penn. Cent. R. R.*, 50 Penn. St. 425; *Waterworks Co. v. Burkhart*, 41 Ind. 364; *Dingley v. City of Boston*, 100 Mass. 544; *Brooklyn Park Comm'rs v. Armstrong*, 45 N. Y. 234; *Coster v. N. J. Rld. Co.*, 3 Zab. 227; *P. & R. I. Rld. Co. v. Birkett*, 62 Ill. 332; *Ral. & G. Rld. Co. v. Davis*, 2 Dev. & Bat. 451; *State v. Rives*, 5 Iredell, 297; *DeVaraigne v. Fox*, 2 Blatch. C. C. 95. In this last case the law is thus stated: "In the exercise of its power to devote private property to public use, the legislature are the exclusive judges of the degree and quality of interest which are proper to be taken, as well as of the necessity of taking it."

Again, it is urged by counsel, that, as our constitution recognizes the granting of the right of way, it by implication forbids the acquisition of anything beyond the mere right of way. Sec. 4 of art. 12 of the constitution reads: "No right of way shall be appropriated to the use of any corporation until full compensation," etc. We cannot give to this the force that is claimed. The right of eminent domain is not granted by this section. That right is one of the powers inherent in the state, as the representative of the public; and this section operates only as a restriction upon this power. If the term, "right of way," is here used in its restricted, technical sense, as referring simply to a mere easement, it would have the power to take the fee unrestricted in the matter of compensation. We think it should be construed, not as defining the quantity of interest to be transferred, but as meaning the right of passage through the grounds of others, irrespective of the interest or title to be acquired. We see therefore in this nothing to limit the force of the adjudications elsewhere; and whatever might be our views, if the question were a new one, we feel constrained to

*Marginal note:* 3. Right of way. Constitution construed.

follow what seems to be the almost unbroken line of decisions. We hold therefore that title in fee simple passed by the condemnation proceedings, if those proceedings were in conformity to the statute. It may be remarked that the legislature of 1868 changed the law as to the quantity of estate passing by such proceedings to a railroad company, (Gen. Stat. 213, § 84,) where it is provided that "the perpetual use of such lands shall vest in such company, its successors and assigns for the use of the railroad."

Were the proceedings in this case in conformity to the statute? It appears that the application of the railroad company was made on the 24th of August 1864; that the 26th of September following was the day fixed by the commissioners for the commencement of the work of laying off the route; that publication of notice of such time was duly made in the "Champion," the first publication being on the 25th of August, and more than thirty days before the appointed day; that the commissioners met at the appointed time and commenced their work; that after completing it they filed in the county clerk's office a written report thereof; that a copy thereof was duly filed in the county treasurer's office, the damages paid, and the report thereafter filed and recorded in the office of the register of deeds. It also appears that the then owners of the tracts through which the right of way was condemned accepted the appraisement and received the money, that the road was constructed and in operation through these tracts in 1866; and that in 1868 and 1869 the plaintiff in error purchased the tracts of the then owners, receiving warranty deeds therefor. At the time of this purchase the hundred-feet strip was not all actually occupied by the railroad company, but only a strip of about twenty feet in width. The balance was and had been cultivated by the prior owners. The affidavit of publication of notice recited that the "notice was published in said newspaper for five consecutive weeks, the first publication being on the 25th day of August 1864, and the last on the 29th day of September 1864." In recording this affidavit by the register of

deeds a clerical mistake was made, the figure 8 being substituted for 5, so that it stated that the first publication was on the  28th, and less than thirty days before the appointed time for the meeting of the commissioners. Now it is contended by counsel for plaintiff in error, that the occupation by the railroad company, at the time of the purchase by plaintiff in error being only of a twenty-feet strip was no notice of any claim to the balance of the one-hundred-feet strip, and that the purchaser was chargeable with notice of the condemnation proceedings only as they appeared upon the records of the register of deeds' office; and that as they there appeared, they showed proceedings invalid, in that no legal notice appeared to have been given of the time of the commissioners' meeting. In this we think counsel is mistaken. The full legal notice was actually given; the proceedings actually had were regular. By those proceedings the title of the then owners was wholly divested. This was divested, not by a voluntary conveyance, but by proceedings *in invitum*, to compel a transfer, exactly as by a sheriff's sale. Now as to such proceedings a party may not trust entirely to the records of the office of register of deeds, but must take notice of whatever appears upon the records of every officer or tribunal having jurisdiction of such proceedings. Again, there was sufficient in the record in the register of deeds' office to put the plaintiff in error upon inquiry. The report of the commissioners recited that notice had been published for thirty days. The day of the last publication was given as September 29th. Running back five weeks would bring it to August 25th, and not August 28th. This record was but a copy of a copy. Proof of publication was not by the law, in terms at least, required. (Sec. 6 of the act, Laws of 1864, p. 237.) The only object of the publication is notice to the land-owners. If with a defective publication, or without any publication, they had appeared to the proceedings, and accepted the award, neither they nor their grantees would be heard to say that the notice was defective, or omitted. We think therefore, as against this plaintiff the court prop-

erly ruled that the proceedings were regular and valid. Some other questions are raised by counsel, but in the view we have taken of these two principal matters, it seems unnecessary to consider them.

The judgment will be affirmed.

All the Justices concurring.