[No. 13905. Department Two. October 26, 1917.]

ADA HORTON *et al., Appellants,* v. OKANOGAN COUNTY, *Respondent.*[1]

DEDICATION—HIGHWAYS—GRANT IN WAIVER OF DAMAGES—SUFFICIENCY. Waiver of damages by owners in proceedings to establish a county road over their lands, which recite: "Giving and granting unto said O. county the said right of way with full power and authority to locate, lay out and establish said road as proposed and to perpetually maintain the same as a county road," are effective dedications, when read in connection with the petition for the establishment of the road and the blue print mentioned in the petition showing the location of the road, the description of the land in the grant, and knowledge on the part of the owners of the proposed road system.

SAME — HIGHWAY — RIGHTS OF SUBSEQUENT PURCHASERS. Such dedications are binding upon subsequent grantees of the owners who took title by mesne conveyances at a time when the petition and blue print were on file in the office of the county commissioners, as shown by the records of the board, especially where the right of way was used to some extent at all times since its dedication and a culvert was constructed and trees planted with reference thereto.

SAME—GRANT—TITLE OF OWNERS—STIPULATION. Where it was stipulated that a dedication was signed by the owners, it will not be held invalid because not signed by wives of the grantors, there being nothing in the record to show that they were married men.

DEDICATION—DESCRIPTION—RECOGNITION BY GRANTEES — ASSUMPTION. Where subsequent grantees recognized a prior dedication of a county road by their grantor, it will be presumed that the description of the premises, written in after the dedication was signed, was inserted with the grantor's consent.

HIGHWAYS—ABANDONMENT. Where county officers insisted that a dedicated county road be kept open and it was kept open and suitable for travel long prior to the expiration of five years after

[1]Reported in 168 Pac. 479.

the grant, there was no abandonment of the road under Rem. Code, § 5673, notwithstanding the county did not improve the road.

DEDICATION—CONDITIONS—PERFORMANCE. A dedication on condition that a system of county roads be established is effective if the system is opened and used by the public under dedications, though not established in accordance with statutory provisions.

Cross-appeals from a judgment of the superior court for Okanogan county, C. H. Neal, Esq., judge *pro tempore*, entered March 22, 1916, favorable in part to plaintiffs, in an action to quiet title, tried to the court. Affirmed on defendant's appeal; reversed on plaintiffs' appeal.

*Smith & Gresham* and *Elmer E. Todd*, for plaintiffs.

*William C. Brown* and *Chas. A. Johnson*, for defendants.

PARKER, J.—The plaintiffs seek a judgment quieting title in themselves to a strip of land as against the claim made thereto by Okanogan county for use as a public highway. Trial upon the merits in the superior court of that county resulted in judgment quieting title in the plaintiffs to the west one-half of the strip as against the claim of the county, and quieting title in the county to the east one-half of the strip for use as a public highway as against the claim of the plaintiffs. From this disposition of the cause, the plaintiffs and the county have both appealed to this court.

The strip of land in controversy is forty feet wide and a quarter of a mile long. It lies along, and twenty feet on each side of, a north and south section line in Okanogan county. In the fall of 1906, C. C. Parkman and eleven other residents of the county, all residing in the neighborhood, signed a petition reading as follows:

"Petition for a County Road.
"To the Honorable Board of County Commissioners of Okanogan County:
"We, the undersigned, twelve freeholders of the townships hereinafter named, all of whom reside in the vicinity of the following described proposed roads pray that county roads be established in said county forty feet in width, having

points of beginning and termination, course and intermediate points, as follows:

"A system of roads one-half mile each way where practical as shown by a blue print furnished by Mr. Christian Andersen, engineer in charge of the Okanogan Irrigation Project. Desired roads are shown in yellow. A much better road being prepared to take the place of the road known as the 'Wild Goose Bill road,' it is further petitioned that the said road be abandoned from its junction with the River Road on the S. W. ¼ Section 26, T. 34, R. 26 E. W. M. to its intersection with the Epley Post Office Road on the North line of Section 27."

The blue print mentioned in this petition was not attached thereto, nor had it then been filed as a public record. It was, however, accessible to all who might become interested in the establishing of the proposed system of roads. It plainly showed the location of the proposed roads, and as a portion of one of the proposed roads so shown was the entire strip of land here in controversy. About the time of or soon after the signing of the petition, a large number of the owners of land over which the proposed roads would pass signed papers reading as follows:

"State of Washington  ss.
County of Okanogan

"In the Matter of the petition of C. C. Parkman et al. for viewing, locating and establishing a county road in said county to be known as the Okanogan Irrigation Project Road system.

Waiver of claim for damages and consent to locate road.

"We, the undersigned, being the owners of the land mentioned in the description immediately following our respective names subscribed below, do, in consideration of the benefits and advantages to accrue to us by the location and establishment of the above proposed county road, hereby consent that said road be established as surveyed, and forever relinquish unto Okanogan County, Washington, a right of way, forty feet in width, and waive all claims for damages of whatever kind which may be occasioned to said land or any portion of the same, by the location, establishment and opening of said road. Giving and granting unto said Okanogan County the

said right of way, with full power and authority to locate, lay out and establish said road as proposed, and to perpetually maintain the same as a county road."

Frank L. Patterson was then the owner of the east one-half of the strip of land in controversy, including land adjoining it upon the east, and while such owner signed one of these papers, the description of the whole of his land following his signature, though there was no particular description therein of the land to be occupied by the road. A. M. Storch was then the owner of the west one-half of the strip of land in controversy, including land adjoining it upon the west, and while such owner signed one of these papers, the description of the whole of his land following his signature, though there was no particular description therein of the land to be occupied by the road. While, at the time of the signing of these papers, the proposed road system had not been given any official name, we think it was understood by all of the signers that their waivers of damages and grants of rights of way made by these papers had reference to the proposed roads as shown on the blue print mentioned in the petition signed by Parkman and others for the establishing of the roads. We think the evidence is clear that this blue print plainly showed one of the proposed roads as occupying the entire strip of land here in controversy, that the blue print had actually been seen by Storch, and that he was acquainted with the proposed system of roads. It is not clear that Patterson had actually seen the blue print, though we think the evidence shows that he knew of the proposed system of roads, and it is plain that the plat was accessible to him had he desired to see it. The petition for the establishing of the roads, together with these waivers of damages and dedicatory grants of right of way, and also the blue print mentioned in the petition for the establishing of the roads, were delivered to the county authorities with the view of having action taken thereon looking to the establishment of the proposed roads. As of date of April 4, 1907, the official record of the proceedings of the board of county

commissioners shows the following minute entry relative to this petition:

"Petition of C. C. Parkman et al. for a system of roads on Pogue Flat and abandonment of a portion of the Wild Goose Bill road presented."

A short time thereafter, apparently as of date about May 25, 1907, the official record of the proceedings of the board of county commissioners shows the following minute entry relative to this petition:

"Petition of C. C. Parkman et al. for a system of roads one-half mile each way, where practicable as shown by the blue print furnished by Christian Andersen, engineer in charge of the Okanogan Irrigation Project and filed in the office of the auditor of Okanogan county, Washington, presented. Petition granted."

These filings and records constitute the only written evidence pointing to the establishment of these roads by formal action of the board of commissioners in pursuance of the county road law of 1895, then in force. It is plain, however, that this was an effort to establish the roads as shown upon the blue print filed with the county commissioners together with the petition, in pursuance of that law. Laws of 1895, p. 82 (Rem. & Bal. Code, §§ 5623 to 5634). The blue print showing the proposed road system which was filed with the petition, as indicated by the minutes of the proceedings of the board of commissioners above quoted, has become lost and, therefore, cannot be produced as evidence in this case. While the evidence before us does not disclose the exact extent of the proposed road system, we think it is shown that the strip of land here involved was a part of the proposed system, and that Storch and Patterson each knew that it was to become a part of the proposed system when they signed their waivers of damages and grants of rights of way.

It is contended in behalf of the county that we have here sufficient record evidence to show that this proposed road system, including the strip of land here involved as a part

thereof, has been established in the manner prescribed by the
county road laws of 1895, then in force. The trial court held
to the contrary, as shown by its written opinion filed prelim-
inary to the rendering of its final judgment. We are inclined
to concur with the views of the trial court upon this question.
We shall assume, however, rather than decide, that there has
been no statutory establishing of a county road over this
strip of land as claimed by the county, and will not stop here
to consider the numerous claimed defects in the proceedings,
jurisdictional and otherwise.

We will proceed to inquire as to whether or not there has
been a dedication of this strip of land by the owners thereof
to the public for use as a highway. Recurring to the papers
signed by Patterson and Storch above quoted, we find that
they not only thereby waived damages which might result to
them from the establishing of the road over their land, but it
is recited therein that they are,

"Giving and granting unto said Okanogan county the said
right of way, with full power and authority to locate, lay out
and establish said road as proposed; and to perpetually main-
tain the same as a county road."

Now, if these dedicatory grants contained particular de-
scriptions of the land to be used as a right of way for the
road, plainly nothing more would be necessary to complete
the dedication than the acceptance thereof by the county au-
thorities or the public regardless of whether or not there was
a formal statutory establishing of the roads. It seems to be
well settled law that a dedication of land to the public as a
highway need not be attended by all the formal requisites of
a deed of conveyance of real property as between private
persons. In 1 Elliott, Roads and Streets (3d ed.), § 133,
that learned author observes:

"It is not essential to the validity of an express dedication
that there should be any precise form of words used, nor that
there should be any written instrument; any language and
any instrument indicating an intent to set apart the land

for the public use would bind the donor from the time of the acceptance by the public."

See, also, 13 Cyc. 451. We are not here concerned with a mere oral dedication, so we express no opinion touching the requisites of such a dedication. At this stage of our inquiry the question is, Do these written grants evidence an intent on the part of Patterson and Storch to dedicate to the public as a highway the strip of land here in question? We think they do when read in connection with the petition for the establishing of the proposed roads, the existence of the blue print mentioned in the petition showing the location of the proposed roads, the description of the land in these grants, including this strip, and the knowledge of Storch and Patterson of the existence of the blue print and proposed road system. We are of the opinion that these were effective dedications, binding upon both Storch and Patterson, and needing only the acceptance thereof by the public or the county authorities to make them effective.

Have these dedications become binding upon the plaintiffs, who have become the owners of the strip of land in controversy by mesne conveyances from Patterson and Storch? These plaintiffs, as such grantees, acquired their title to the adjoining land on each side of the strip in controversy through deeds describing land including the strip, at a time when the petition for the establishing of the road, and presumably the blue print showing the location of one of the roads over the strip, was on file in the office of the clerk of the board of county commissioners and after the action of that board was had purporting to grant the petition, as shown in the records of the minutes of the board above quoted. This, we think, was enough to suggest inquiry on their part, which, had it been made, would have led to the discovery of these dedicatory grants which were then in the hands of the county authorities, either the clerk of the board of county commissioners or the county engineer, though the grants were not recorded as conveyances in the office of the auditor of the county. In addi-

tion to this, the evidence shows that this right of way has been used as a roadway to at least some extent at all times since its dedication by persons living in the neighborhood. It is true that a gate was maintained for a time across the north end of the strip, but even that did not prevent the free use of the strip as a roadway by any one desiring to use it. Later it was removed by one of the road supervisors. Storch had his fence on the section line when the grants of rights of way were made; later, however, a part of this fence was removed and a culvert built for the roadway over an irrigation ditch directly upon the section line, so that the center of the traveled road would there be approximately on the section line. The building of this culvert was assented to, if not participated in by Storch and Patterson's grantee, who constructed on the east side of the road his fence and irrigation ditch and planted his trees so as to leave the full twenty feet of the roadway upon that side open and free for travel. All of these things were, as we view them, so open and notorious as not only to evidence an intention on the part of those participating therein to recognize this whole strip as a roadway, but also to give notice to all persons that it was so recognized.

Some contention is made on behalf of the plaintiffs that the grants of rights of way made by Storch and Patterson were of no effect as grants because not signed by either of their wives, if they had wives. The record is silent as to whether or not they were married at the time of the signing of these papers by them, but it stipulated that they were the owners of the land so affected. We think this is the only answer this contention requires.

Some contention is made against the claimed dedication of the right of way by Patterson because of the fact that, when he signed the paper purporting to grant the right of way, the description of his land was not upon the paper, but was inserted afterwards by someone other than Patterson. The evidence does seem to so show, and had we nothing to rest a claim of dedication from Patterson upon other than this

paper, this contention might be worthy of serious consideration. We think, however, that the acts of Patterson's grantee, above noticed, is such an admission of dedication as to now warrant the presumption that the description was written in with Patterson's consent.

Some contention is made on the plaintiff's behalf on the theory that the county and the public abandoned this road within five years after the dedicatory grants made by Patterson and Storch. This contention is rested upon the provisions of Rem. Code, § 5673. Assuming, for argument's sake, that that section is applicable to a dedication of this nature, we think the answer to the plaintiffs' contention is found in the fact that, as we view the evidence, the county and the public did assert their right to use this strip of land as a public road long before the expiration of five years after the making of the grants by Patterson and Storch. It is probably true that the county never actually did any improvement work on the road, but that its road officers insisted upon the road being kept open, and that it was, in fact, kept open for travel and was suitable for travel long before the expiration of the five years following the making of the dedicatory grants, we think is clear.

If it be suggested that these grants of rights of way made by Patterson and Storch were in effect upon condition that the system of roads proposed be established, we think such suggestion may be answered by the fact that the evidence here indicates that a large part, if not all of the system of roads so proposed, is now, and has been for some time, open and in use by the public. This appearing, no one can complain because of the fact that this system of roads was not established strictly in accordance with statutory provisions.

We conclude that the judgment of the trial court should be affirmed in so far as it quiets title in the county to the east one-half of the strip of land in question, and the judgment of the trial court should be reversed in so far as it quiets title in the plaintiffs to the west one-half of the strip of land

in question.    It is so ordered, and the cause is remanded to the superior court of Okanogan county with directions to enter a judgment quieting the title in the county to the west one-half of the strip for use as a public highway.

ELLIS, C. J., HOLCOMB, FULLERTON, and MOUNT, JJ., concur.