STATE OF WYOMING EX REL STATE HIGHWAY
COMMISSION OF WYOMING,

*Plaintiff and Appellant,*

vs.

STANLEY MEEKER,

*Defendant and Respondent.*

(No. 2715; March 13th, 1956; 294 Pac. (2d) 603)

For the plaintiff and appellant the cause was submitted upon the brief of George F. Guy, Attorney General, Robert H. McPhillamey, Deputy Attorney General and Robert L. Duncan, Special Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by Mr. Duncan.

For the defendant and respondent the cause was submitted upon the brief of Jones & Jones of Wheatland, Wyoming, and oral argument by Mr. William R. Jones.

212

## OPINION

BLUME, Chief Justice.

This is an action brought by the State of Wyoming on the relation of the State Highway Commission of Wyoming as plaintiff against Stanley Meeker as defendant to enjoin the latter from interfering with its right of way for highway purposes over lands hereinafter mentioned.

The Board of County Commissioners of Laramie County, Wyoming, at the behest of the State Highway Commission, as provided by § 48-303 W.C.S. 1945, commenced condemnation proceedings to acquire a right of way for highway purposes over the lands hereinafter mentioned. These condemnation proceedings were completed on June 7, 1950. Damages in the amount of $1,652 were paid to Nell Fowler, the then owner of the property. The State Highway Commission did not immediately take possession of the right of way thus acquired, but did let a contract for the construction of a highway over and along the acquired right of way in December 1953 and immediately thereafter the construction of the highway was commenced and at the time of the trial of this case was substantially completed.

Defendant claims to be the owner of the land over which the right of way runs and that he bought the land for $25.25 per acre in 1952. He claims he went

all over the land, had an abstract of title prepared which did not show any right of way over the land; that he did not notice any signs of any purported highway; that he did not know of the interest of the State of Wyoming acquired by reason of the condemnation proceedings and found no instrument of record in the office of the county clerk showing the highway. The case was tried to the court without a jury. After the trial of the case, the court found in favor of the defendant Meeker and against the plaintiff but left in force the temporary injunction theretofore issued during the appeal of the case to this court. The plaintiff has duly perfected the appeal and it has been argued in this court. A motion to dismiss the appeal was filed, but the plaintiff and appellant complied with our order in connection therewith, so we shall not consider it further.

At the trial of the case, the parties entered into a stipulation which, omitting the heading and subscription, is as follows:

"It is hereby agreed and stipulated by and between the parties hereto, acting by and through their respective counsel as follows:

## I

"That on, to wit, June 7, 1950, the Board of County Commissioners of Laramie County, Wyoming, completed a condemnation proceeding to establish a right of way for the State of Wyoming for a highway presently known as Project No. I-FI-233 (11), after having theretofore complied in all respects with the then existing provisions of the law of the State of Wyoming, providing for the establishment of a road, over, upon and across the following described premises:

"All that portion of the E½E½ of Section 2, T. 19 N., R. 67 W. of the 6th P.M., bounded by parallel lines 300 feet apart, being 150 feet on each side when measured at right angles to the following described center line of highway, and by the prolongation of said

parallel lines to the legal boundaries of the above described lands, and by those portions of the legal boundaries intercepted between said parallel lines as prolonged:

"Beginning at a point on the south boundary of said Section 2 from which the southeast corner thereof bears S. 88° 57' E. a distance of 1123.0 feet; thence N. 16° 45' E. a distance of 3897.1 feet to a point on the east boundary of said Section 2 from which the northeast corner thereof bears due north a distance of 1568.5 feet.

"Said parcel of land containing 26.8 acres, more or less.

## II

"That on said date, to wit, June 7, 1950, and at all times during and pending the condemnation proceedings hereinabove referred to, one, Nell Fowler was the record title holder of the above described premises, and that the said Nell Fowler did file a claim for damages in the said condemnation proceedings and was subsequently awarded damages in the amount of $1,652.00 by the appraisers appointed in said condemnation proceedings, and said amount was thereafter paid in full to the then record title holder, Nell Fowler, Chugwater, Wyoming.

## III

"That the said road over, upon and across the above described premises was platted in the County Road Book of Laramie County, Wyoming, by placing a plat of said road in said County Road Book with notations recorded thereon of the proceedings of said Board of County Commissioners of Laramie County, Wyoming, in relation to the location and establishment of said road, all in compliance with and as provided for by Section 48-322, Wyoming Compiled Statutes, 1945."

I. Counsel for the defendant in attempting to uphold the judgment of the trial court relies on the provisions of §§ 66-119, 66-124 W.C.S. 1945, reading as follows:

66-119. "Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."

66-124. "The term 'conveyance,' as used in this Act [§§ 66-601—66-134], shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged, or assigned, or by which the title to any real estate may be affected in law or in equity, except wills, leases for a term not exceeding three [3] years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands, and contain a promise or agreement to furnish said deed at some future time."

The transfer of title by eminent domain is not a conveyance within the meaning of the sections above mentioned. It is a transfer of title in invitum, that is to say, against the consent of the owner. At common law in England, there was no system of registration or recording, and the rule between claimants of the same title was found in the maxim "prior in tempore potior est in jure," which means, he who is first in time has the better right. 45 Am. Jur. 435; 23 R.C.L. 170; 2 Merrill on Notice § 921. That is still the law except as abrogated by statute. Thus it is said in 2 Merrill on Notice § 921 as follows:

"So thoroughly has the recording office entered into our legal system that lawyers and judges alike tend to refer to notice by record as though it were a common law principle without reference to the statutes upon which it rests. Yet because the foundation is statutory, and because difference in phraseology may involve variance in interpretation and application, we need to remember constantly that the necessity for recordation, as well as its effect, is a creature of ordinance, and that without the command of our omnisa-

pient representatives in legislature assembled no one is required to place his title upon record in order to preserve it. In a number of instances statutes which merely authorize or permit the recording of particular instruments have been construed not to make such recording essential to the protection of property interests arising thereunder."

Numerous cases are cited. So it is said in 45 Am. Jur. § 155, p. 515:

"The failure to record an instrument which is not required to be recorded does not affect or vitiate the instrument as to anyone, and it is valid not only between the parties thereto, but also to subsequent purchasers and encumbrancers."

That rule is applicable in the case at bar. Until 1953 we had no statute which required the transfer of title by eminent domain to be recorded in the ordinary and regular books of record kept for the transfer of property by conveyances. Hence it is quite clear that the title the State acquired under the condemnation proceedings in 1950 is valid and good against any subsequent purchaser of the same property. The former owner of that property then had nothing further to convey. The trial court herein decided this case immediately after the end of the trial without looking up the authorities and apparently held that the transfer of title under eminent domain proceedings which has not been recorded in the regular and ordinary books kept for the purpose is void as against subsequent innocent purchasers for value. That, as we have seen above, clearly is not the law.

II. We reach the same result by considering this case from other standpoints. The right of eminent domain is an inherent, sovereign power, and can be exercised by the legislature in any manner it sees fit, subject only to the constitutional provision that compensation must be made to the owner. I Lewis Eminent Domain § 367. The exercise of that power is, in a case like that before us, legislative in character. 29 C.J.S.

§ 87, p. 878. The legislature itself may exercise that power assuming that no constitutional provisions forbid it to do so directly. 29 C.J.S. § 88, p. 880. It may delegate the power as it has done in the case at bar. 29 C.J.S. § 89, p. 881. If the legislature had itself condemned the right of way in question, everyone including subsequent innocent purchasers would have been compelled to take notice thereof. There is no valid reason why that same rule should not apply to the agent of the legislature. Ample provision for notice has been made. According to § 48-316 W.C.S. 1945, notice of the proposed exercise of eminent domain is given to all persons who have or claim to have an interest in the land. The meetings of the board of county commissioners are public. § 27-807 W.C.S. 1945. Notice of the proceedings of the board of county commissioners must be published. § 27-821 W.C.S. 1945. We presume that has been done in the case at bar. The right of way is surveyed and the land entered for that purpose. Viewers are appointed to assess the damages and presumably enter upon the land assessing the land. Defendant Meeker was in possession of the land in question as lessee during all of the time the eminent domain proceedings were taking place and must have had notice thereof or at least he is presumed to have had notice thereof. It is said in 18 Am. Jur. 956:

"In some jurisdictions the actual taking or condemnation of land for certain public purposes may be effected by the vote or resolution of some administrative board."

In 20 C.J.S. § 91, p. 863, it is said:

"County boards are usually required to keep a record of their proceedings * * * . Their proceedings are matters of public record of which electors are presumed to have notice."

In Collins v. City of Detroit, 195 Mich. 330, 161 N.W. 905, the court stated:

"The board of supervisors is the legislative body of the county, and its proceedings are matter of public record of which the electors are presumed to have notice. People v. Hartwell, 12 Mich. 508, 86 Am. Dec. 70."

In Corwin v. St. Louis & S. F. Ry. Co., 51 Kan. 451, 33 P. 99, 103, a party purchased property after condemnation proceedings and after damages had been paid to the owner. The court, holding that the subsequent purchaser acquired no title as against the eminent domain proceedings, stated as follows:

"In Challiss v. Railroad Co., 16 Kan. 117, 129, it is said: 'Now, as to such proceedings, a party may not trust entirely to the records of the office of register of deeds, but must take notice of whatever appears upon the records of every office or tribunal having jurisdiction of such proceedings.' * * * Under the condemnation proceedings, all of which were of record in the public offices of Sedgwick county, Woodman, the purchaser from Mrs. Sanders, and the plaintiffs, who hold under Woodman, had constructive notice that an easement over and upon all the lots which they purchased had been legally appropriated for railroad purposes. For some reason, they never examined the public records. Had they made an examination of the report on file in the office of the register of deeds, they would have had actual notice of the appropriation of all of the lots. The condemnation proceedings appearing upon the public records are as conclusive as to them as to Mrs. Sanders."

In Horton v. Okanogan County, 98 Wash. 626, 168 P. 479, 482, it seems that one Storch and one Patterson owned certain lands. They gave a right of way of the lands to the county. The county accepted this grant and proceeded to establish a road. Thereafter Storch and Patterson conveyed the land to the plaintiffs without saying anything about the right of way for a road. The court held that the ownership for road was paramount to the subsequent sale to the plaintiffs. The court in that connection stated as follows:

"Have these dedications become binding upon the plaintiffs who have become the owners of the strip of land in controversy by mesne conveyances from Patterson and Storch? These plaintiffs, as such grantees, acquired their title to the adjoining land on each side of the strip in controversy through deeds describing land including the strip, at a time when the petition for the establishing of the road and presumably the blueprint showing the location of one of the roads over the strip was on file in the office of the clerk of the board of county commissioners, and after the action of that board was had purporting to grant the petition, as shown in the records of the minutes of the board, above quoted. This we think, was enough to suggest inquiry on their part, which, had it been made, would have led to the discovery of these dedicatory grants which were then in the hands of the county authorities either the clerk of the board of county commissioners or the county engineer, though the grants were not recorded as conveyances in the office of the auditor of the county."

See also National Railway Co. v. Easton & Amboy R. R. Co., 36 N.J. Law 181.

III. Section 48-322 W.C.S. 1945, as it read prior to 1953, provides as follows:

"If, upon considering and acting upon the report of the viewers or otherwise, the board of county commissioners shall decide to lay out or alter any road, they shall cause the county surveyor to make an accurate survey thereof, if such survey is necessary, and to plat the same in books to be provided by the county for such purpose, and the county clerk shall record in the same books opposite or near to such plat so that the same may be easily ascertained to be concerning the platted road, the proceeding of the said board in relation to the location, establishment or alteration of said road, in order to keep in a separate book a record of all the county roads of that county."

It accordingly seems that while the transfer of title was not noted upon the regular and ordinary recording books of the county, it was noted upon the road book in the county clerk's office and reference was made to

the proceedings of the county commissioners in regard to the condemnation proceedings. Counsel for defendant Meeker claim that was no notice at all. It may be noted however that the statutes made it mandatory to comply with the provision of the section just mentioned. The legislature has not specifically provided that the proceedings of the board shall be constructive notice. However, it is stated in 2 Merrill on Notice § 919 that: "A similar reading usually is given to statutes which require certain instruments to be recorded, unless it clearly is apparent that the requirement has some other object." The application of that rule is clearly seen in those cases which deal with acquisition of railroad companies under the public domain. It is held that when the railroad company files the records in the local registry office as required by statute, the title of the railroad company is then complete against all public settlors. In Great Northern Ry. Co. v. Steinke, 261 U. S. 119, 43 S. Ct. 316, 318, 67 L. Ed, 564, it is said:

"There is no provision in the act for the issue of a patent, but this does not detract from the efficacy of the grant. The approved map is intended to be the equivalent of a patent defining the grant conformably to the intendment of the act (Noble v. Union River Logging R. Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123), and to relate back, as against intervening claims, to the date when the map was filed in the local land office for transmission through the General Land Office to the Secretary of Interior (Stalker v. Oregon Short Line R. R. Co., 225 U. S. 142, 32 Sup. Ct. 636, 56 L. Ed. 1027)."

See also Oregon Short Line R. Co. v. Stalker, 14 Idaho 362, 94 P. 56.

The revised statutes of Massachusetts, 1835, Ch. 39, § 75, provide as follows:

"Every railroad corporation shall, in all cases, file the location of their road within one year, with the commissioners of each county through which the same

passes, defining the courses, distances, and boundaries of such portion thereof, as lies within each county, respectively."

That provision came under consideration in the case of Brock v. Old Colony R. Co., 146 Mass. 194, 15 N. E. 555. The late Justice Holmes, then a justice of the appellate court of Massachusetts, succinctly, as was his wont, stated as follows:

"The location identified the land, and therefore satisfied Rev. St. c. 39, § 75. Filing it was sufficient notice of the taking."

In the case of Houston v. Paterson State Line Traction Co., 69 N. J. Law 168, 54 A. 403, the syllabus reads as follows:

"In proceedings brought to condemn lands within the filed route of a traction railway company under and pursuant to the traction act of 1893 (P. L. p. 302; 3 Gen. St. p. 3235), a conveyance of the lands by the owner, at any time after the application is made and notice given to the owner as directed by the order of the justice, will not defeat the proceedings nor require notice thereof to be given to the grantee."

In Page v. Lane, 120 Colo. 416, 211 P. 2d 549, 550, a recording of a plat and dedication of some avenues was held to give public notice. The court said in part:

"By the recording of the plat and the dedication, all subsequent purchasers were charged with notice of the existence of the easements, which were appurtenances to plaintiffs' tracts as well as all others; this appurtenance was a grant from the original owner, and all subsequent purchasers had notice of the rights of others to the beneficial enjoyment of the properties involved. This right inhered in the land and concerned the premises and pertained to its enjoyment and possession and followed with the transfer of the land."

See also United States v. Sandlass, 34 F. Supp. 81; 6 Nichols on Eminent Domain, p. 85.

It follows from what has been said that the judgment of the trial court must be and is reversed with direction to enter judgment for the plaintiff as prayed.

*Reversed.*

Harnsberger, J., and Parker, J., concur.