2010 WY 154

Edward A. KING and Janice C. King,
Appellants (Plaintiffs),

v.

BOARD OF COUNTY COMMISSIONERS
OF the COUNTY OF FREMONT,
Appellee (Defendant).

Hansen's North Fork Ranch, LLLP,
Appellant (Intervening
Plaintiff)

v.

Board of County Commissioners of the
County of Fremont, Appellee
(Defendant).

Nos. S–09–0227, S–09–0228.

Supreme Court of Wyoming.

Nov. 30, 2010.

sion. We will affirm the district court's orders.

Representing Appellants: Jason A. Neville and Keith J. Dodson, Williams, Porter, Day & Neville, P.C., Casper, WY for Edward & Janice King; and Steven F. Freudenthal of Freudenthal, Salzburg & Bonds, Cheyenne, WY for Hanson's North Fork Ranch. Argument by Messrs. Freudenthal and Dodson.

Representing Appellees: Jodi A. Darrough, Deputy Fremont County Attorney, Lander, WY.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶ 1] The Appellants in Case No. S–09–0227 are Edward A. and Janice C. King (Kings). They seek review of a partial summary judgment order, as well as a second order which then dismissed the remainder of the Kings' complaint. The Appellant in Case No. S–09–0228 is Hansen's North Fork Ranch (Hansen). Hansen was an intervening plaintiff in the proceedings below and its pleadings raised much the same issues as did the Kings. These appeals arise from the district court's determination of the status of a county road, known as "Bunker Road," which fell under the jurisdiction of the Appellee, Board of County Commissioners of the County of Fremont (Commission). The Kings alleged that the records concerning the existence of that road were not properly recorded or stored by Fremont County and, hence, Bunker Road had never been created as contemplated by the governing statutes. In addition, both Appellants contended the road had been vacated or abandoned. The district court determined that the Appellants were incorrect on both points. As a matter of undisputed fact and law, the district court held Bunker Road had been created and further, that as a matter of law it still existed because it had not forthrightly and officially been vacated or abandoned by the Commis-

* Chief Justice at time of oral argument.

## ISSUES

[¶ 2] The Kings raise these issues:

A. Whether the district court's April 23, 2008 entry of summary judgment to [the Commission] based upon its finding that Bunker Road was properly established in 1913 was in error.

B. Whether the district court erred when it dismissed the case in reliance on *State ex rel. State Highway Commission v. Meeker,* [75 Wyo. 210] 294 P.2d 603 (Wyo. 1956).

C. Whether [Kings] were bona fide subsequent purchasers, and thus purchased their land without Bunker Road clouding the title.

The Commission's statement of the issues is the same as that presented by the Kings. However, in its brief the Commission also contends that neither the Kings nor Hansen may challenge the partial summary judgment order because neither filed a timely notice of appeal after the entry of that order. Both the Kings and Hansen contest that point in their reply briefs. Hansen's statement of the issues mirrors Issues A and B set out above by the Kings.

## BACKGROUND INFORMATION AND PROCEEDINGS

[¶ 3] The Kings filed their complaint on December 14, 2005, after their efforts to obtain a ruling from the Commission that Bunker Road had been abandoned or vacated had failed. The documentation prepared at the time Bunker Road was created satisfied the Commission that the statutory requirements for the creation of a road, such as Bunker Road (County Road 111), had been fulfilled. The Kings' claim that the creation of Bunker Road had not been perfected relied almost entirely on the circumstance that it was not "recorded" in a manner contemplated by Wyoming's "first in time, first in right" recording statute.

[¶ 4] In 1999, the Kings purchased property which Bunker Road burdened in a way that damaged their plan to subdivide it, and which had been unknown to them at the time of purchase, even though a traditional title search was completed. The Kings alleged that the information which described that road and its encroachment on the land that the Kings ultimately purchased was never "recorded" in the county clerk's office, although that documentation may have been filed there originally and may have been stored in the county courthouse for a time. However, the Kings averred that a county road map located in the county clerk's office did not show it as a county road. In addition, the Kings averred that the Commission had not created Bunker Road in the manner required by Wyoming law because a copy of the plat and notes of the survey were never filed in the "office of the county clerk." This allegation was supported in part by a letter dated February 18, 2000, from Fremont County Director of Planning Ray Price (Price) to Jim Freeman (Freeman), in which Price stated that the road would be "difficult or even impossible to find or even negotiate, except on foot." However, Price also indicated in that same letter that the road easement in question had "been established" and that he did "not have any evidence that this road easement was ever abandoned by Fremont County." In a memo dated April 24, 2002, from Price to the Commission, Price wrote:

> Bunker Road has not been used by the general public or maintained by Fremont County for quite some time. However, the road can be found on the ground and could be traveled. Sometime within the last five to seven years a new access road was constructed by private individuals in a location that, over much of its route, uses the old county road right-of-way. Mr. Freeman has been denied permission to use the portion of the new access road between the place where it leaves Baldwin Creek Road and where it connects with the old right-of-way of Bunker Road. I believe that Mr. [Sam] Dunlap and Mr. Freeman will ask that Bunker Road be re-opened.

[¶ 5] The Kings' complaint continued:

23. The Board of County Commissioners of the County of Fremont, on October 4, 2005, took action to determine that "upon examination of public records and testimony associated with Bunker Road that: 1) it is a county road; and 2) it is not in the public interest to vacate said Road and to decline to adopt a resolution to formally vacate and abandon the Fremont County Road known as Bunker Road." This action was unnecessary as Bunker Road was never properly established as a County Road.

24. The Board of County Commissioners of Fremont County, Wyoming never properly recorded Bunker Road as a public road or highway pursuant to applicable law and roads not properly recorded pursuant to statute were considered vacated as public roads. *Yeager v. Forbes,* 2003 WY 134, ¶ 32, 78 P.3d 241, [255].

25. Upon information and belief it is alleged that sometime between the years of 1987 and 1993 the Fremont County Commissioners authorized the Fremont County Road Superintendent to place signs along Bunker Road indicating that the road had been abandon[ed] and was so designated by posted signs indicating the road was closed to traffic. . . .

26. Based upon the Wyoming Supreme Court ruling in *Yeager v. Forbes,* 2003 WY 134, 78 P.3d 241 there is no public road or highway along this track referred to as Bunker Road.

27. A controversy exists between [Kings] and the [Commission] concerning whether Bunker Road is a public road. [Kings] believe [ ] that the *Yeager* decision and the application of the applicable law to this controversy clearly demonstrate that Bunker Road is not a county road.

28. A justifiable controversy exists between [Kings] and [the Commission], and such controversy is of a kind and nature as to be adjudicated in a declaratory judgment action. Bunker Road is not a public road of any kind, and [the Commission] has no right to prevent [Kings] from denying access to the use of Bunker Road as [they] deem [ ] appropriate to protect [their] property.

[¶ 6]  On February 13, 2006, Hansen filed its motion to intervene.  Hansen's complaint is, more or less, identical to that of the Kings, except for the description of the lands affected.  Hansen asserted a "special interest" in the outcome of this matter because, of the approximate two-mile length of Bunker Road, one-half of that length is located on Hansen's land.

[¶ 7]  The Commission answered both complaints generally denying the allegations of those complaints and asserting a variety of defenses, including that if the district court were to grant the relief on the bases asserted by the Kings and Hansen, then it would ". . . eventually necessitate the Court also declaring all other county roads established according to the proper statutory procedure invalid as well."

[¶ 8]  On June 15, 2007, Kings and Hansen filed a consolidated motion for summary judgment, as well as a memorandum in support of that motion.  The Commission also filed a motion for summary judgment, as well as a response to Kings' and Hansen's competing motions for summary judgment.

[¶ 9]  In an order entered of record on April 23, 2008, the district court denied Kings' and Hansen's motions for a summary judgment in part, and granted the Commission's motion for summary judgment in part.  The district court concluded that, as a matter of law, Bunker Road was duly established in 1913 by the Commission pursuant to its statutory authority.  The district court described the remaining two issues to be tried as:  (1) whether or not the Appellants had actual notice of Bunker Road, and (2) whether or not they are bona fide purchasers of the property they now own which may be subject to the Commission's interest in Bunker Road.

## DISCUSSION

### Was Notice of Appeal Timely as to Partial Summary Judgment

[¶ 10]  W.R.A.P. 2.01 requires that a notice of appeal be filed within 30 days from entry of the "appealable order."  W.R.A.P. 1.05 provides:

An appealable order is:

(a) An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment;  or

(b) An order affecting a substantial right made in a special proceeding;  or

(c) An order made upon a summary application in an action after judgment;  or

(d) An order, including a conditional order, granting a new trial on the grounds stated in Rule 59(a)(4) and (5), Wyo. R. Civ. P.;  if an appeal is taken from such an order, the judgment shall remain final and in effect for the purposes of appeal by another party;  or

(e) Interlocutory orders and decrees of the district courts which:

(1) Grant, continue, or modify injunctions, or dissolve injunctions, or refuse to dissolve or modify injunctions;  or

(2) Appoint receivers, or issue orders to wind up receiverships, or to take steps to accomplish the purposes thereof, such as directing sales or other disposition of property.

(See Rule 13 for additional guidance on review of interlocutory orders.)

[¶ 11]  W.R.C.P. 54(b) allows a district court to certify orders that adjudicate fewer than all claims upon an express determination that there is no just reason for delay and upon the express direction for the entry of judgment.  No such determination was sought or granted in this case, and the Kings and Hansen were not required to appeal the partial summary judgment until the remaining issues were decided.  Thus, we will consider both issues raised by the Appellants.

### Creation of Bunker Road

[¶ 12]  The district court issued its partial summary judgment order on April 23, 2008.  The subject of the partial summary judgment was limited to whether or not the Commission's actions in 1912–13 were sufficiently in compliance with governing statutes so as to have actually created Bunker Road.  The Kings and Hansen contend that the process was flawed and, therefore, Bunker Road

never was created. The standard of review to be applied is this:

> [W]e examine the record from the vantage point most favorable to the party opposing the motion and give that party the benefit of all the favorable inferences which may be fairly drawn. *Castleberry v. Phelan,* 2004 WY 151, ¶ 8, 101 P.3d 460, 462 (Wyo. 2004). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

*Wilson v. Bd. of County Comm'rs,* 2007 WY 42, ¶ 12, 153 P.3d 917, 922 (Wyo.2007).

[¶ 13] The statutes in effect at that time are found in Wyoming Compiled Statutes 1910, §§ 2513–2531. Section 2523 requires that a survey and record of the road "be filed in the office of the county clerk." The Kings and Hansen contend that this step was not perfected, although the documentation required to be assembled by the governing statutes was in the possession of Fremont County at the time this action arose, as well as at all times in the interim between 1913 and the present day. However, it is not disputed that the grantor/grantee index did not provide those examining property titles any information about the road. Further, unless a title examiner inquired of a county clerk employee about the existence and actual location of the records pertaining to county roads, then whether or not a particular parcel of land was burdened by a county road would not be evident. It is this flaw that is the mainstay of the Appellants' contentions herein and on that basis, it is contended that the road should be declared not to have ever come into existence. With respect to this particular matter, the district court concluded thus: "However, it is not the physical location of these records that create the ultimate issue in this case but whether or not they were made of record for purposes of providing constructive notice."

[¶ 14] The district court relied in significant part on the case of *Lakewood v. Mavromatis,* 817 P.2d 90 (Colo.1991) in deciding to grant a partial summary judgment in favor of the Commission with respect to the validity, *ab initio,* of Bunker Road. Although that case differs from the present case on the facts because a road was never built on the tract of land in question, the Colorado Supreme Court concluded that placing the road petition and incorporated plat in the road book in the office of the county clerk was adequate to dedicate the tract as a public highway, but *it did not* provide constructive notice to bona fide subsequent purchasers of the governmental entity's interest in the disputed parcel of land. *Id.,* 817 P.2d at 98. The entirety of that case is instructive with respect to issues such as those raised here, but its significance with respect to the instant case is limited to that noted above. Based on that case, the district court concluded that the remaining issues would be required to be tried; to wit: (1) whether or not Kings and Hansen had actual notice of Bunker Road, and (2) whether or not they are bona fide subsequent purchasers of the property they now own that may be subject to the Commission's interest in Bunker Road. The district court concluded that the Wyoming Legislature also intended to require the recording of the Bunker Road Petition in compliance with the Wyoming Recording Act. "However, failure to do so did not void the establish[ed] Bunker Road, especially with regard to the parties in the initial road proceedings because they had actual notice of the road." The district court indicated that this case was complicated because it was unclear if Bunker Road was ever established on the ground. Moreover, while there was evidence that at least a faint "track" of Bunker Road could be found on the ground for most of its distance, it had been fenced over in places, it had been washed out in places, it was blocked by vegetation in places, a well-head was in its course, and a building had been placed along its course so that Bunker Road disappeared into, and then re-emerged on the other end of, the building.

[¶ 15] However, based on the totality of the circumstances set out above, we agree with the district court that there were no genuine issues of material fact as to whether Bunker Road had been created in the first instance.

**Actual Notice—Bona Fide Purchasers**

[¶ 16] On August 18, 2009, the Commission filed a motion to dismiss on the basis

that once a county road has been created, it can only be extinguished through formal vacation proceedings. Prior to a trial, the district court reconsidered its previous ruling in light of the case *State ex rel. State Highway Comm'n v. Meeker*, 75 Wyo. 210, 294 P.2d 603–8 (1956) (emphasis added), wherein this Court held as follows:

> This is an action brought by the State of Wyoming on the relation of the State Highway Commission of Wyoming as plaintiff against Stanley Meeker as defendant to enjoin the latter from interfering with its right of way for highway purposes over lands hereinafter mentioned.
>
> The Board of County Commissioners of Laramie County, Wyoming, at the behest of the State Highway Commission, as provided by § 48–303, W.C.S.1945, commenced condemnation proceedings to acquire a right of way for highway purposes over the lands hereinafter mentioned. These condemnation proceedings were completed on June 7, 1950. Damages in the amount of $1,652 were paid to Nell Fowler, the then owner of the property. The State Highway Commission did not immediately take possession of the right of way thus acquired, but did let a contract for the construction of a highway over and along the acquired right of way in December 1953 and immediately thereafter the construction of the highway was commenced and at the time of the trial of this case was substantially completed.
>
> Defendant claims to be the owner of the land over which the right of way runs and that he bought the land for $25.25 per acre in 1952. He claims he went all over the land, had an abstract of title prepared which did not show any right of way over the land; that he did not notice any signs of any purported highway; that he did not know of the interest of the State of Wyoming acquired by reason of the condemnation proceedings and found no instrument of record in the office of the county clerk showing the highway. The case was tried to the court without a jury. After the trial of the case, the court found in favor of the defendant Meeker and against the plaintiff but left in force the temporary injunction theretofore issued during the appeal of the

case to this court. The plaintiff has duly perfected the appeal and it has been argued in this court. A motion to dismiss the appeal was filed, but the plaintiff and appellant complied with our order in connection therewith, so we shall not consider it further.

> At the trial of the case, the parties entered into a stipulation.... [Stipulation omitted.]

. . . .

I. Counsel for the defendant in attempting to uphold the judgment of the trial court relies on the provisions of §§ 66–119, 66–124, W.C.S.1945, reading as follows:

> 66–119. 'Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.'
>
> 66–124. 'The term 'conveyance,' as used in this Act (§§ 66–101–66–134), shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged, or assigned, or by which the title to any real estate may be affected in law or in equity, except wills, leases for a term not exceeding three (3) years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands, and contain a promise or agreement to furnish said deed at some future time.'

The transfer of title by eminent domain is not a conveyance within the meaning of the sections above mentioned. It is a transfer of title in invitum, that is to say, against the consent of the owner. At common law in England, there was no system of registration or recording, and the rule between claimants of the same title was found in the maxim 'prior in tempore potior est in jure,' which means, he who is first in time has the better right. 45 Am.

Jur. 435; 23 R.C.L. 170; 2 Merrill on Notice § 921. That is still the law except as abrogated by statute. Thus it is said in 2 Merrill on Notice § 921 as follows:

'So thoroughly has the recording office entered into our legal system that lawyers and judges alike tend to refer to notice by record as though it were a common law principal without reference to the statutes upon which it rests. Yet because the foundation is statutory, and because difference in phraseology may involve variance in interpretation and application, we need to remember constantly that the necessity for recordation, as well as its effect, is a creature of ordinance, and that without the command of our omnisapient representatives in legislature assembled no one is required to place his title upon record in order to preserve it. In a number of instances statutes which merely authorize or permit the recording of particular instruments have been construed not to make such recording essential to the protection of property interests arising thereunder.'

Numerous cases are cited. So it is said in 45 Am.Jur. § 155, p. 515:

'The failure to record an instrument which is not required to be recorded does not affect or vitiate the instrument as to anyone, and it is valid not only between the parties thereto, but also to subsequent purchasers and encumbrancers.'

That rule is applicable in the case at bar. *Until 1953 we had no statute which required the transfer of title by eminent domain to be recorded in the ordinary and regular books of record kept for the transfer of property by conveyances. Hence it is quite clear that the title the State acquired under the condemnation proceedings in 1950 is valid and good against any subsequent purchaser of the same property.* The former owner of that property then had nothing further to convey. The trial court herein decided this case immediately after the end of the trial without looking up the authorities and apparently held that the transfer of title under eminent domain proceedings which has not been recorded in the regular and ordinary books kept for the purpose is void as against subsequent innocent purchasers for value. That, as we have seen above, clearly is not the law.

II. We reach the same result by considering this case from other standpoints. The right of eminent domain is an inherent, sovereign power, and can be exercised by the legislature in any manner it sees fit, subject only to the constitutional provision that compensation must be made to the owner. 1 Lewis Eminent Domain § 367. The exercise of that power is, in a case like that before us, legislative in character. 29 C.J.S., Eminent Domain, § 87, p. 878. The legislature itself may exercise that power assuming that no constitutional provisions forbid it to do so directly. 29 C.J.S., Eminent Domain, § 88, p. 880. It may delegate the power as it has done in the case at bar. 29 C.J.S., Eminent Domain, § 89, p. 881. If the legislature had itself condemned the right of way in question, everyone including subsequent innocent purchasers would have been compelled to take notice thereof. There is no valid reason why that same rule should not apply to the agent of the legislature. Ample provision for notice has been made. According to § 48–316, W.C.S.1945, notice of the proposed exercise of eminent domain is given to all persons who have or claim to have an interest in the land. The meetings of the board of county commissioners are public. § 27–807, W.C.S.1945. Notice of the proceedings of the board of county commissioners must be published. § 27–821, W.C.S.1945. We presume that has been done in the case at bar. The right of way is surveyed and the land entered for that purpose. Viewers are appointed to assess the damages and presumably enter upon the land assessing the land. Defendant Meeker was in possession of the land in question as lessee during all of the time the eminent domain proceedings were taking place and must have had notice thereof or at least he is presumed to have had notice thereof. It is said in 18 Am.Jur. 956:

'In some jurisdictions the actual taking or condemnation of land for certain public purposes may be effected by the vote or resolution of some administrative board.'

In 20 C.J.S., Counties, § 91, p. 863, it is said:

'County boards are usually required to keep a record of their proceedings * * *. Their proceedings are matters of public record of which electors, are presumed to have notice.'

In *Collins v. City of Detroit*, 195 Mich. 330, 161 N.W. 905, 906, the court stated:

'The board of supervisors is the legislative body of the county, and its proceedings are matter of public record of which the electors are presumed to have notice. *People [ex rel. Speed] v. Hartwell*, 12 Mich. 508, 86 Am. Dec. 70.'

In *Corwin v. St. Louis & S.F. Ry. Co.*, 51 Kan. 451, 33 P. 99, 103, a party purchased property after condemnation proceedings and after damages had been paid to the owner. The court, holding that the subsequent purchaser acquired no title as against the eminent domain proceedings, stated as follows:

'In *Challiss v. [Atchison, T. & S.F.] Railroad Co.*, 16 Kan. 117, 129, it is said: 'Now, as to such proceedings, a party may not trust entirely to the records of the office of register of deeds, but must take notice of whatever appears upon the records of every office or tribunal having jurisdiction of such proceedings.' * * * Under the condemnation proceedings, all of which were of record in the public offices of Sedgwick County, Woodman, the purchaser from Mrs. Sanders, and the plaintiffs, who hold under Woodman, had constructive notice that an easement over and upon all the lots which they purchased had been legally appropriated for railroad purposes. For some reason, they never examined the public records. Had they made an examination of the report on file in the office of the register of deeds, they would have had actual notice of the appropriation of all of the lots. The condemnation proceedings appearing upon the public records are as conclusive as to them as to Mrs. Sanders.'

In *Horton v. Okanogan County*, 98 Wash. 626, 168 P. 479, 482, it seems that one Storch and one Patterson owned certain lands. They gave a right of way of the lands to the county. The county accepted this grant and proceeded to establish a road. Thereafter Storch and Patterson conveyed the land to the ad. Thereafter Storch and Patterson conveyed the land to the plaintiffs without saying anything about the right of way for a road. The court held that the ownership for road was paramount to the subsequent sale to the plaintiffs. The court in that connection stated as follows:

'Have these dedications become binding upon the plaintiffs who have become the owners of the strip of land in controversy by mesne conveyances from Patterson and Storch? These plaintiffs, as such grantees, acquired their title to the adjoining land on each side of the strip in controversy through deeds describing land including the strip, at a time when the petition for the establishing of the road and presumably the blueprint showing the location of one of the roads over the strip was on file in the office of the clerk of the board of county commissioners, and after the action of that board was had purporting to grant the petition, as shown in the records of the minutes of the board, above quoted. This we think, was enough to suggest inquiry on their part, which, had it been made, would have led to the discovery of these dedicatory grants which were then in the hands of the county authorities either the clerk of the board of county commissioners or the county engineer, though the grants were not recorded as conveyances in the office of the auditor of the county.'

See also *National Railway Co. v. Easton & Amboy R. Co.*, 36 N.J.L. 181.

III. Section 48–322, W.C.S.1945, as it read prior to 1953, provides as follows:

'If, upon considering and acting upon the report of the viewers or otherwise, the board of county commissioners shall de-

cide to lay out or alter any road, they shall cause the county surveyor to make an accurate survey thereof, if such survey is necessary, and to plat the same in books to be provided by the county for such purpose, and the county clerk shall record in the same books opposite or near to such plat so that the same may be easily ascertained to be concerning the platted road, the proceeding of the said board in relation to the location, establishment or alteration of said road, in order to keep in a separate book a record of all the county roads of that county.'

It accordingly seems that while the transfer of title was not noted upon the regular and ordinary recording books of the county, it was noted upon the road book in the county clerk's office and reference was made to the proceedings of the county commissioners in regard to the condemnation proceedings. Counsel for defendant Meeker claim that was no notice at all. It may be noted however that the statutes made it mandatory to comply with the provision of the section just mentioned. The legislature has not specifically provided that the proceedings of the board shall be constructive notice. However, it is stated in 2 Merrill on *Notice* § 919 that: 'A similar reading usually is given to statutes which require certain instruments to be recorded, unless it clearly is apparent that the requirement has some other object.' The application of that rule is clearly seen in those cases which deal with acquisition of railroad companies under the public domain. It is held that when the railroad company files the records in the local registry office as required by statute, the title of the railroad company is then complete against all public settlors. In *Great Northern Ry. Co. v. Steinke*, 261 U.S. 119, 43 S.Ct. 316, 318, 67 L.Ed. 564, it is said:

'There is no provision in the act for the issue of a patent, but this does not detract from the efficacy of the grant. The approved map is intended to be the equivalent of a patent defining the grant conformably to the intendment of the act (*Noble v. Union River Logging R. Co.*, 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123), and to relate back, as against intervening claims, to the date when the map was filed in the local land office for transmission through the General Land Office to the Secretary of Interior (*Stalker v. Oregon Short Line R. Co.*, 225 U.S. 142, 32 S.Ct. 636, 56 L.Ed. 1027).'

See also *Oregon Short Line R. Co. v. Stalker*, 14 Idaho 362, 94 P. 56.

The Revised Statutes of Massachusetts 1835, Ch. 39, § 75, provide as follows:

'Every railroad corporation shall, in all cases, file the location of their road within one year, with the commissioners of each county through which the same passes, defining the courses, distances, and boundaries of such portion thereof, as lies within each county, respectively.'

That provision came under consideration in the case of *Brock v. Old Colony R. Co.*, 146 Mass. 194, 15 N.E. 555, 557. The late Justice Holmes, then a justice of the appellate court of Massachusetts, succinctly, as was his wont, stated as follows:

'The location identified the land, and therefore satisfied Rev.St. c. 39, § 75. Filing it was sufficient notice of the taking.'

In the case of *Houston v. Paterson & State Line Traction Co.*, 69 N.J.L. 168, 54 A. 403, the syllabus reads as follows:

'In proceedings brought to condemn lands within the filed route of a traction railway company under and pursuant to the traction act of 1893 (P.L. p. 302; 3 Gen.St. p. 3235 [N.J.S.A. 48:15–6 et seq. ]), a conveyance of the lands by the owner, at any time after the application is made and notice given to the owner as directed by the order of the justice, will not defeat the proceedings nor require notice thereof to be given to the grantee.'

In *Page v. Lane*, 120 Colo. 416, 211 P.2d 549, 550, a recording of a plat and dedication of some avenues was held to give public notice. The court said in part:

'By the recording of the plat and the dedication, all subsequent purchasers were charged with notice of the exis-

tence of the easements, which were appurtenances to plaintiffs' tracts as well as all others; this appurtenance was a grant from the original owner, and all subsequent purchasers had notice of the rights of others to the beneficial enjoyment of the properties involved. This right inhered in the land and concerned the premises and pertained to its enjoyment and possession and followed with the transfer of the land.'

See also *United States v. Sandlass, D.C.,* 34 F.Supp. 81, 6 Nichols on Eminent Domain, p. 85.

It follows from what has been said that the judgment of the trial court must be and is reversed with direction to enter judgment for the plaintiff as prayed.

[¶ 17]   Based on that case, the wording of the statutes in place in 1913, the fact that the road had never been "formally vacated," and the circumstance that the County Road Book gave constructive notice of the road had inquiry been made of the county clerk, the district court held that the motion to dismiss should be granted.

[¶ 18]   The heart of the controversy in this case lies in the tension between Wyoming's long-standing "unrecorded conveyance" statute and those statutes that deal with the creation of county roads.

[¶ 19]   Wyo. Comp. Stat. § 3654 (1910) provided:

§ 3654.   **Unrecorded conveyance void as to subsequent purchasers.**  Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first recorded.

[¶ 20]   At the time Bunker Road was created, Wyo. Comp. Stat. §§ 2513 and 2514 (1910) provided:

§ 2513.   **Public roads defined.**  All roads within this state shall be public highways which have been or may be declared by law to be national, state, territorial or county roads.  All roads that have been

designated or marked as highways on government maps or plats in the record of any land office of the United States within this state, and which have been publicly used as traveled highways, and which have not been closed or vacated by order of the board of the county commissioners of the county wherein the same are located, are declared to be public highways until the same are closed or vacated by order of the board of county commissioners of the county wherein the same are located, and the board or officer charged by law with such duty shall keep the same open and in repair the same as in the case of roads regularly laid out and opened by order of the board of county commissioners.

§ 2514.   **County commissioners to control roads.**  All county roads shall be under the supervision, management and control of the board of county commissioners of the county wherein such roads are located, and no county road shall hereafter be established, altered or vacated in any county in this state, except by authority of the board of county commissioners of the county wherein such road is located except as is otherwise provided by law.

[¶ 21]   Wyo. Comp. Stat. § 2531 (1910) provided for the procedures to be followed for the establishment or alteration of any road.  That statute also provided for the keeping of records of all such roads:

§ 2531.   **Duties of county board.**

. . . If, upon considering and acting upon the report of the viewers or otherwise, the board of county commissioners shall decide to lay out or alter any road, they shall cause the county surveyor to make an accurate survey thereof, if such survey is necessary, and to plat the same in books to be provided by the county for such purpose, and **the county clerk shall record in the same books opposite or near to such plat so that the same may be easily ascertained to be concerning the platted road, the proceeding of the said board in relation to the location, establishment or alteration of said road, in order to keep *in a separate book* a record of all the county roads of that county.  [Emphasis added.]**

[¶ 22]  1919 Wyo. Sess. Laws, ch. 112, § 1, amended § 2513 as follows:

**Section 2513.  Public Roads Defined.** On and after January 1st, 1922, all roads within this State shall be highways, which have been or may be declared by law to be national, state, territorial or county roads or highways. *It shall be the duty of the several Boards of County Commissioners, within their respective counties, prior to said date, to determine what if any such roads now or heretofore travelled but not heretofore officially established and recorded, are necessary or important for the public use as permanent roads, and to cause such roads to be recorded, or if need be laid out, established and recorded and all roads recorded as aforesaid, shall be highways.* No other roads shall be highways unless and until lawfully established as such by official authority. [Emphasis added.]

■ [¶ 23]  The records of Bunker Road were maintained in the manner mandated by these statutes. Eventually, the "recorded" documents with respect to county roads were moved to the county planning office and later to the county roads/transportation department. However, at all times the records were available to the public had inquiry been made about them to the county clerk or to other county departments. Moreover, county roads, as noted above, cannot be vacated except by official action of the county commissioners of a county.

[¶ 24]  The Commission also relies in part upon a decision of this Court in *Board of County Comm'rs v. State,* 369 P.2d 537, 540–43 (Wyo.1962):

At the inception we note that the defendant board in its answer admitted, at least tacitly, the establishment of road 212 and in the brief stated, 'We do not deem it necessary to comment upon the sufficiency of the evidence introduced for the establishment of Road No. 212, since this case need not turn upon the technicalities of establishing a county road, but upon principles more broad and fundamental * * *.' Notwithstanding the position thus taken the defendant board here urges 'The first question that comes to the Commissioners'

minds is * * * simple and crucial * * *: Where is Road 212?' thereby implying that the establishment was invalid for uncertainty. No consideration will be given to this contention since defendants are bound by their pleadings. *State ex rel. Tibbals v. District Court of Ninth Judicial Dist. in and for Fremont County,* 42 Wyo. 417, 295 P. 916; *Nugent v. Powell,* 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am. St. Rep. 17; and see 1 Bancroft, Code Pleading, § 429. Moreover, even where a defense contains both an admission and a denial respecting the same fact the admission will prevail, *Strom v. Felton,* 76 Wyo. 370, 302 P.2d 917.

The defendants argue that before a writ of mandamus will lie a relator must show a clear legal right to which he is entitled, which is withheld or threatened to be withheld from him, and that there is a corresponding duty on the part of the respondent to perform, which duty can only be enforced by means of the right, and cite *State ex rel. R.R. Crow & Co. v. Copenhaver,* 64 Wyo. 1, 184 P.2d 594, and *State ex rel. Sullivan v. Schnitger,* 16 Wyo. 479, 95 P. 698. They urge that mandamus will not generally be granted to coerce discretionary action upon the part of a public official or board or to require a legal right which is not clear or complete, citing *State ex rel. Van Patten v. Ellis,* 37 Wyo. 124, 259 P. 812, 263 P. 105. They say that although plaintiffs' petition alleged that the board's clear duty was set out in § 18–149, W.S. 1957, and § 24–5, W.S.1957, the former merely enumerates the powers of the board, including its right to lay out, alter, or discontinue any road running through the county, and the latter simply states that all county roads shall be under the management and supervision of the board and that no county road shall be established, altered, or vacated except by its authority.

Plaintiffs, without contesting the rule that mandamus will issue only to enforce the performance of a clear duty, now rely upon the existence of a statute not mentioned in their pleading, namely, § 24–66, W.S.1957, which reads:

'Whenever a public road is ordered to be established or altered, according to the provisions of this act, which shall pass through, or on enclosed lands, the road overseer, or other proper officer, shall give the owner, agent or occupant of such lands, notice in writing to remove the fences thereon, and if such owner, agent or occupant shall not move his fence, within thirty days thereafter, the same may be removed by the proper officer, and the road opened and worked; and such owner shall forfeit and pay twenty dollars for each day he shall permit his fence to remain after said thirty days, and shall pay all necessary cost of removal, to be collected by the proper officer, in any court of competent jurisdiction, for the use and benefit of the general county road fund.'

Plaintiffs contend that the board's obligation under this section was clear and definite, especially in the light of its previous recognition of the existence of the road, and cite a case from the neighboring jurisdiction of Nebraska, *State ex rel. Draper v. Freese*, 147 Neb. 147, 22 N.W.2d 556. In that case certain persons sought mandamus against county commissioners, requiring them to reopen and repair a certain public highway. The evidence disclosed that some seventy years previously steps had been taken to establish the road, that no work had been done on it at public expense, although it had not been vacated, and that from the beginning there had been some travel on a trail which in some places varied from the location of the road as laid out. The petition was dismissed by the trial court and on appeal the supreme court reversed and directed that the proper parties proceed to open and work the road to make it usable by the public. Although other aspects were of importance in the decision, the court significantly stated that mandamus was generally recognized as the proper remedy to compel public officers to perform their duty to take care of and keep in repair public highways whenever the refusal to act was a determination not to discharge a plain duty.

Our research indicates that the doctrine enunciated in the *Freese* case has not been altered in Nebraska, and the case of *Burkhardt v. Cihlar*, 149 Neb. 712, 32 N.W.2d 197, cited by plaintiffs, is authority for the fact that an injunction will not there lie to prevent property owners from maintaining fences across a road since mandamus is a proper remedy.

In passing, it may be noted that statutes in existence at the time of the *Freese* decision included § 39–103, R.S.Neb.1943:

'The county board has a general supervision over the public roads of the county, with power to establish and maintain them as herein provided, and to see that the laws in relation to them are carried into effect.'

Similar in many respects to our § 24–5, and § 39–116, R.S.Neb.1943:

'After the road has been finally established, the plat of the road must be recorded and platted by the county surveyor in the road plat book of the county with a proper reference to the files in the county clerk's office where the papers relating to the same may be found. The county clerk must record the petition, damage claims, field notes, and all other papers relating to the road. The clerk must direct the road overseers to have the same opened and worked; but when crops have been planted or sowed before the road is finally established, the opening thereof shall be delayed until the crop is harvested.'

Although the provision in this statute regarding the opening and working of the road is perhaps more obligatory in nature than the corresponding provision in § 24–66, W.S.1957, the distinction is not of importance under these circumstances in view of the rule stated in *People ex rel. Brokaw v. Commissioners of Highways*, 130 Ill. 482, 22 N.E. 596, 598, 6 L.R.A. 161, and approved by this court in *Burnham Hotel Co. v. City of Cheyenne*, 30 Wyo. 458, 222 P. 1:

' * * * The word 'may' in a statute will be construed to mean 'shall' whenever the rights of the public or of third persons depend upon the exercise of the power of the performance of the duty to

which it refers, and such is its meaning in all cases where the public interests and rights are concerned, or a public duty is imposed upon public officers, and the public or third persons have a claim *de jure* that the power shall be exercised. * * *'

Since the Nebraska and Wyoming statutes are substantially similar in many respects, the doctrine enunciated in the *Freese* case is persuasive.

The contention which the board here makes that it does not know where the established road is fails to convince because the surveyor who purported to show the obscurities did not employ all of the recorded data. Moreover, the order of the trial court must be construed in the light of the undisputed rule applicable in situations relating to the maintenance of public highways, i.e., mandamus is recognized as a proper remedy to compel public officers to take care of and keep in repair public highways only when the exercise is so apparent and obvious that the refusal to act is the result of a determination not to discharge a plain duty. See 34 Am.Jur. Mandamus § 193; 55 C.J.S. Mandamus § 177; and Annotation, 46 A.L.R. 257. Thereunder, the obligation to work the road depends upon the exercise of sound discretion by the board, considering the best interests of Fremont County as a whole, taking into consideration the extent of the road's anticipated use, its importance in relation to other roads, the practicability of maintenance, and the availability of county finances for that purpose. Had the board which established the road in 1921 or any successor considered the highway impractical or without benefit to the public, there was clear authority for alteration or vacation, § 24–43, W.S.1957.

Plaintiffs did not plead that any road existed by prescription and specifically disclaimed any such position in the argument here. Therefore, the trial court did not purport to try title to any property but merely ordered the board to take steps regarding the road which had been established. Defendants' contentions regarding the error of the court in this regard are without merit. Likewise, defendants' argument that there was a failure to demand performance is invalid because the testimony is clear that plaintiffs at different times consulted with the board and requested action to be taken for the removal of the obstructions. This demand was sufficient.

From what we have said, it follows that the order of the trial court must be affirmed. Subsequent interpretations of such order shall be in accord with the views herein expressed.

[¶ 25] In the case *Board of County Comm'rs v. White,* 547 P.2d 1195, 1198–1201 (Wyo.1976), we held:

The trial court was in error, however, in holding that appellant had 'no legal or equitable right, title or interest' in or to the lands covered by that instrument entitled 'Right–of–Way Easement' executed by Lee E. and Loretta Irene McQuay on June 23, 1965, and recorded in the office of the county clerk June 24, 1965, which conveyed an easement to Carbon County. Since the McQuays were the then owners of the lands across which this easement was granted, the Board of County Commissioners of Carbon County (having accepted and recorded the same) had no right or authority to reconvey this right-of-way or to surrender the public's right thereunder by virtue of the quitclaim deed dated June 4, 1968. It seems evident that the traveling public has a vested right to the use of public roads, and earlier this court recognized such right in the public and that a road could not be vacated except by official act of the board of county commissioners, *Board of Com'rs of Sheridan County v. Patrick,* 18 Wyo. 130, 104 P. 531, 532, rehearing denied [18 Wyo. 130] 107 P. 748. Although the board is given very general powers to manage and control county roads, § 24–5, W.S.1957, this must be exercised in a lawful manner and the statutes governing the actions of the board with reference thereto must be construed in pari materia. Section 24–43, W.S.1957, has since its enactment provided the procedure 'for the establishment, vacation or alteration' of county roads, and the significant portion thereof is as follows:

'* * * The course and the point of termination of said road to be established, altered or vacated, as the case may be, and thereafter following out the provisions of article 2, chapter 52, Wyoming Revised Statutes, 1931, not inconsistent therewith.' (Emphasis supplied.)

Section 24–52, W.S.1957, C.1967, was included in Art. 2, Ch. 52 of the 1931 Revised Statutes therein mentioned and is the principal procedural statute contained therein. Although this section itself omits any reference to vacation, any such proposed vacation must proceed with proper notice to those interested, including the traveling public in this instance. This court has earlier suggested that the provisions of this section be utilized to alter or vacate such roads, *Board of County Commissioners of County of Fremont v. State*, Wyo., 369 P.2d 537, 542. In the instant case once there was a dedication to the public use by the McQuays' grant of an easement, its acceptance and recording by this board, and general use by the public, this road had been established.

We consider the case of *Board of County Commissioners of County of Fremont v. State*, Wyo., 369 P.2d 537, quite persuasive in this matter; and although it involved a mandamus application, in that case the court held that absent any proper vacation a writ would lie to compel the county commissioners to keep an established road open and remove from the right-of-way any fences or obstructions. There is, however, other abundant authority applicable to this case, as exemplified by the annotations appearing in 175 A.L.R. 760, and particularly pp. 762 and 765, which set out the rule as follows:

'While some limitations to its application are to be found, the rule appears to be quite general that where the procedure for the vacation, discontinuance or alteration of a public street or highway by direct action of public authorities is prescribed by statute, it is necessary to adhere to such procedure in order that the vacation or alteration may be effective; such a result may not be accomplished by contract (see infra, § 3) nor are the public authorities precluded by principles of estoppel from denying the termination of the existence, or alteration, of the public way in the absence of substantial compliance with the statutory procedure. This is evidenced by the many cases in which it is stated, either expressly or by strong implication, that such procedure is exclusive, or that it must be strictly followed.' (p. 762)

'Applying the rule that the procedure prescribed by statute for vacating, discontinuing, or relocating streets or highways must be substantially followed in order to terminate the existence, or change the route, of a public way, the courts in a number of cases have held or recognized that the execution of a contract or agreement contemplating such a termination or change was ineffectual to obtain such a result, where the statute had not been complied with.' (p. 765)

See also 39 C.J.S. Highways, §§ 117 and 118, pp. 1053–54.

A case bearing considerable similarity to our instant problem is *San Diego County v. California Water & Telephone Co.*, 30 Cal.2d 817, 186 P.2d 124, 175 A.L.R. 747, involving an action by the county to enjoin the flooding of a county road because of impounding of water in a reservoir. The defendant claimed, and it was a fact, that the county had entered into agreements with the defendant whereby the defendants granted temporary rights-of-way to the county for roads to circumvent the area to be flooded and the county waived any damages to it resulting from the flooding. The court, 186 P.2d at 128–129, determined that the cases are uniform that:

'* * * if the Legislature has provided a method by which a county or city may abandon or vacate roads, that method is exclusive. (Citing cases.) An analogous line of decisions holds that a municipality must follow the statutory procedure prescribed for the sale of public property, and an attempt to dispose of the property by contract will not be enforced. (Citing cases.) * * * Specifically, it has been held that an agreement by local officials to abandon, vacate, or

sell a road is void. (Citing cases.) * * *.'

The California court held that the county was not estopped by its agreements and the doctrine of estoppel cannot be invoked where the statutory procedure is the measure of the power to act, particularly where it would operate to defeat the effective operation of a policy adopted to protect the public. The various statutory procedures exist to protect citizens and taxpayers from the loss of its property.

Another case of interest is *Ercanbrack v. Judd, Utah,* 524 P.2d 595. There the county commissioners entered upon their records the fact that an established county road was abandoned and gave permission to a landowner to put up a notice that the road was closed. The landowner did so and placed a gate and lock to prevent access. Under very similar statutes that court summarized succinctly the rule, 524 P.2d at 597:

'Since there was no notice given to either the abutting landowners or the general public, the motion of the commissioner as approved was and is a nullity, and the public road will continue to be such until it is abandoned in accordance with the statutes.'

We hold that the agreements of June 4, 1968, and May 25, 1971, are null and void as an attempt to vacate an established county road by methods other than those by statute provided. We further hold that any deed to the McQuay lands, executed by the county commissioners to the appellees, is of no force and effect.

There is little force in appellant's last contention because the record definitely shows that when White in 1968 determined to build a reservoir which would flood certain portions of the road, a part of which at least lay within the boundaries of the right-of-way easement, he made a proposal to the board of commissioners that for a term of not to exceed four years or until Interstate 80 be constructed the county could build a road around the water which would extend over the then county road at a mutually agreeable location. The board accepted such proposal on June 4, 1968.

On May 25, 1971, in contemplation of the expiration of the earlier permission, Bryan White again submitted to the commissioners a proposal, reciting among other things that:

' * * * It is understood and agreed that said Interstate 80 has now been constructed and the heretofore right-of-way easement for road purposes has terminated. That by reason of said termination the undersigned, Bryan White, has closed said right-of-way and road to said public at large. That the undersigned Bryan White does hereby agree to reinstate said right-of-way easement for road purposes only across the hereinafter described lands until project SC–CSM–6–13 (McFadden–Arlington Road) in Carbon County, Wyoming, is completed or until January 1, 1974, whichever period of time is shorter. In consideration thereof, the undersigned, agrees to open said road forthwith so that Carbon County, Wyoming, can enter and make certain improvements to said road for the benefit of the traveling public. It is agreed upon the part of Carbon County, Wyoming, that any and all improvements to said road shall revert to and become the property of the land owner upon the termination of this right-of-way easement as described aforesaid. And it is further agreed that the instrument executed June 4, 1968 by the parties hereto is made a part hereof and a photo copy of the same is attached to this instrument. * * *'

It is upon this basis that appellant has asserted its third claim, which falls from its own weight by its clear recognition of the temporary status thereof and indicates quite the contrary to appellant's contentions. The temporary status of this arrangement was also recognized in the testimony of Korkow, a road supervisor employed by the Carbon County Road and Bridge Department. It is to be remembered, however, we do not find that these agreements in any manner operate to deprive the county of its claim and interest in and to the lands covered by the original McQuay easement for public use. We are unable to understand why

appellant has since 1960 temporized in this matter and failed to complete any proper proceedings which would establish this as a public road. If the so-called McFadden–Arlington Road is necessary and should be established for the public use, the board of commissioners should proceed to institute and complete the necessary proceedings to effect that purpose. We hold the proceedings of 1960 and 1963 abandoned by the intervening conduct of the parties and the passage of time. Any claim of prescriptive right must be made in any new proceeding for the establishment of the road, as must the appellees' claim for damages.

The case is therefore remanded to the district court with directions to correct its finding that appellant has no right, title or claim in or to the lands and the road covered by the right-of-way easement executed by the McQuays and to enjoin the appellees from in any manner interfering with the public use thereof.

[¶ 26] Kings and Hansen participated in an effort to vacate Bunker Road, but that was unsuccessful. In addition, we have recognized that the filing of a plat and survey notes filed in the office of the county clerk serves to establish a county road, although that was perhaps only dicta in that case because the affected county was not a party. *Kern v. Deerwood Ranch,* 528 P.2d 910, 911–12 (Wyo.1974).

[¶ 27] In 1987, the legislature enacted the following statutes on this subject:

§ 24–3–201. **Purpose of procedure.**

The legislature finds that due to inaccurate and inconsistent records, there exist roads which are seldom used, not maintained and are not identified as or believed by the public to be county roads but are, in fact, county roads. Recognizing the numerous difficulties resulting from the existence of such county roads, the legislature finds it in the best interest of the public to create a procedure to identify county roads, thereby altering and vacating these abandoned or unnecessary county roads without survey.

§ 24–3–202. **Definitions.**

(a) As used in this act:

(i) "Board" means the board of county commissioners of any county;

(ii) "This act" means W.S. 24–3–201 through 24–3–206.

§ 24–3–203. **Board may identify county roads through specified procedure; resolution; terms; limited to not more than 1 per area.**

(a) Notwithstanding W.S. 24–1–102 and 24–3–101 through 24–3–127, when it finds the public interest so requires, the board may initiate the identification procedure under this act for county roads in the county by adopting a resolution to which maps shall be incorporated by reference which shall indicate a general description of all county roads in the area described in the map which shall be unaffected by identification under the resolution. No county road shall be listed as unaffected by a resolution under this act unless it was established under other law. No map incorporated into the resolution shall describe an area of less than six hundred forty (640) acres.

(b) The board shall not adopt more than one (1) resolution identifying county roads under this act in any area of the county.

(c) No road shall be vacated or altered under this act if it is currently identified and maintained as a county road. The identification procedure under this act shall not be used to establish a county road which was not previously established under other law.

§ 24–3–204. **Notice of identification to be published.**

(a) Prior to adoption of a resolution identifying county roads in any area in the county, notice of the proposed identification shall be published for four (4) successive weeks in four (4) successive issues in a newspaper of general circulation in the county in substantially the following form:

NOTICE OF IDENTIFICATION OF COUNTY ROADS UNDER W.S. 24–3–201 THROUGH 24–3–206

TO WHOM IT MAY CONCERN: The Board of County Commissioners intends to identify county roads in the following areas of .... (name of county) county

under the identification procedure contained in W.S. 24-3-201 through 24-3-206: (general description of areas described in the map, i.e. USGS Quad map, section, township, range, etc.)

The only county roads in the township which shall exist after this identification procedure are described as follows:

(Road name, road number or petition number)

All other county roads within the area identified in the map which are not described above shall be accordingly vacated upon adoption of the resolution for identification. All objections to or claims for damage by reason of this identification procedure shall be filed in writing with the county clerk of this county before 12:00 noon [12:00 p.m.] on the .... day of .... (not less than thirty (30) days after publication of the fourth notice) or the county roads will be vacated as indicated without reference to the objections or claims.

(b) The notice shall include a map of each area affected indicating the approximate location of county roads which shall exist after the proposed identification action.

§ 24-3-205. Objections and claims for damages; when filed; when barred; procedure for considering.

(a) If the board initiates identification of county roads under this act, the board shall establish a date not less than thirty (30) days after the fourth notice is published, by which all objections to and claims for damages by reason of the identification shall be filed with the county clerk.

(b) Objections to or claims for damages by reason of identification under this act filed after 12:00 noon [12:00 p.m.] on the date established in subsection (a) of this section shall not be considered by the board and are deemed waived.

(c) If claims for damage are filed under this section, the claims shall be considered in the same manner as provided under W.S. 24-3-114 through 24-3-121.

§ 24-3-206. Effect of identification.

If the board identifies roads under this act, the roads designated as county roads in the identification action shall be the only county roads within the area identified and all other county roads within the area identified are accordingly altered or vacated. The board shall direct the county clerk to and the county clerk shall record the identification as an entry in the abstract of lands books as if it were a conveyance of rights from the county to the lands affected. Roads identified as county roads under this act, shall not be county roads unless the county has a valid title or recorded easement to the right-of-way.

Wyo. Stat. §§ 24-3-201 through 206 (Michie 1987). Also see *Yeager v. Forbes,* 2003 WY 134, ¶¶ 31-32, 78 P.3d 241, 255 (Wyo.2003).

[¶ 28] The statutes recited above authorize a county to remedy a problem such as the one that has arisen here. However, these statutes do not mandate action on the part of counties and are not determinative of the issues raised herein. The existing statutes, as well as our cases interpreting them over the years, track closely with common law principles that have long played a key role in issues such as this. Two of the most important of those are: "Once a road, always a road;" and, where a road is created by a statutory procedure such as that in play here, such a road cannot be abandoned, vacated, or disestablished without there being clear action on the part of the governmental entity that created the road to vacate, abandon, or disestablish it. See generally 39 Am.Jur.2d *Highways, Streets, and Bridges* §§ 148-189 (2008).

[¶ 29] For these reasons, we conclude that the district court was correct that there was no genuine issue of material fact as to whether Bunker Road had been created. In addition, we agree with the district court that Bunker Road has not been vacated, abandoned, or disestablished by Fremont County and, therefore, it is still a county road as a matter of law.

### CONCLUSION

[¶ 30] The district court's partial summary judgment order is affirmed. The district court's order dismissing the further

claims of the Kings and Hansen is also affirmed.

BURKE, Justice, concurring in part and dissenting in part, with whom VOIGT, Justice, joins.

[¶ 31] I respectfully dissent from that part of the majority's decision affirming the dismissal of the Kings' and Hansen's claims. Like the majority, I agree with the district court's decision to grant summary judgment to the Kings and Hansen on the question of whether the easement for Bunker Road was of public record, and to set for trial the question of whether they were *bona fide* purchasers for value without notice of the Bunker Road easement. I disagree, however, with the district court's subsequent decision to dismiss their claims in reliance on *State Highway Comm'n v. Meeker*, 75 Wyo. 210, 294 P.2d 603 (Wyo.1956).

[¶ 32] Mr. Meeker challenged the county's ownership of a highway right-of-way across his property on the basis that there was "no instrument of record in the office of the county clerk showing the highway." *Id.* at 215, 294 P.2d at 604. The right-of-way had been acquired through eminent domain, however, and the Court found "no statute which required the transfer of title by eminent domain to be recorded" in the public record. *Id.* at 218, 294 P.2d at 605. The Court said that "failure to record an instrument which is not required to be recorded does not affect or vitiate the instrument as to anyone, and it is valid not only between the parties thereto, but also to subsequent purchasers." *Id.* "Hence," the Court wrote, "it is quite clear that the title the State acquired under the condemnation proceedings in 1950 is valid and good against any subsequent purchaser of the same property." *Id.* Because Bunker Road had been established through eminent domain, the district court applied the ruling of the *Meeker* case and dismissed the Kings' and Hansen's claims.

[¶ 33] *Meeker* detours from a long line of Wyoming cases emphasizing that county road easements must be placed on the public record. *George W. Condon Co. v. Board of County Comm'rs of Natrona County*, 56 Wyo. 38, 54, 103 P.2d 401, 407 (1940) (statute "indicates a policy that roads should be shown on the records"); *Nixon v. Edwards*, 72 Wyo. 274, 293, 264 P.2d 287, 294 (1953) (Statutes dating from 1877, 1886, 1919, and 1921, all demonstrate "how thoroughly the legislature was convinced that all rural public roads should be shown on the public records."); *Rocky Mountain Sheep Co. v. Board of County Comm'rs of Carbon County*, 73 Wyo. 11, 269 P.2d 314 (1954); *Ruby v. Schuett*, 360 P.2d 170 (Wyo.1961); *Kern v. Deerwood Ranch*, 528 P.2d 910 (Wyo.1974); *Yeager v. Forbes*, 2003 WY 134, 78 P.3d 241 (Wyo.2003). Each of these cases is factually distinguishable from the case before us now, but taken together, they establish that the Wyoming Legislature and this Court have consistently, with the exception of *Meeker*, said that county roads must be placed on the public record.

[¶ 34] This policy extends not to county roads only, but to all real property conveyances. "Public policy requires that subsequent purchasers be able to rely on the title shown in public records." *Grose v. Sauvageau*, 942 P.2d 398, 403 (Wyo.1997). Applying *Meeker* to the case at hand, however, means that neither the Kings nor Hansen can rely on their title as shown in the Fremont County Clerk's property records. That seriously undermines "the purpose of our recording statutes, which entitle one to rely on public records and determine whether or not a certain property is subject to liens, prior encumbrances or other outstanding claims." *Wyoming Dep't of Revenue & Taxation–Excise Tax Div. v. First Wyoming Bank, N.A.-Kemmerer*, 718 P.2d 31, 35 (Wyo. 1986).

[¶ 35] The Court in *Meeker* indicated that the proceedings of the Board of County Commissioners gave Mr. Meeker constructive notice of the Commissioners' decision to acquire the highway right-of-way. As stated in a droll but persuasive argument offered by Hansen, if the ruling in *Meeker* is controlling in this case, then

every conveyance of land would have to be accompanied by a review of all proceedings of the county commissioners back to 1890. With the greatest respect to the important and critical functions performed by each

board of county commissioners, the inordinate cost and agonizing boredom of such an exercise is readily apparent.

[¶ 36] Because of its anomalous nature and impracticable result, the decision in *Meeker* should be limited to its peculiar facts. By the time of trial in the *Meeker* case, "construction of the highway was commenced and ... substantially completed." *Meeker*, 75 Wyo. at 214, 294 P.2d at 604. That is not true of Bunker Road. In addition, Mr. Meeker "was in possession of the land in question as lessee during all of the time the eminent domain proceedings were taking place and must have had notice thereof." *Id.* at 219, 294 P.2d at 606. Hansen and the Kings were not in possession of the land in question in 1913 when the County Commissioners undertook to establish Bunker Road.

[¶ 37] More significantly, *Meeker* is distinguishable on legal grounds. That decision rested on the Court's finding "no statute which required the transfer of title by eminent domain to be recorded" in the public record. *Id.* at 218, 294 P.2d at 605. In the case before us now, there is at least one statute requiring the Bunker Road easement to be recorded. In 1919, the Wyoming Legislature enacted this statute:

> On and after January 1st, 1922, all roads within this State shall be highways, which have been or may be declared by law to be national, state, territorial or county roads or highways. It shall be the duty of the several Boards of County Commissioners, within their respective counties, prior to said date, to determine what if any such roads now or heretofore travelled but not heretofore officially established and recorded, are necessary or important for the public use as permanent roads, and to cause such roads to be recorded, or if need be laid out, established and recorded, and all roads recorded as aforesaid, shall be highways. No other roads shall be highways unless and until lawfully established as such by official authority.

1919 Wyo. Sess. Laws ch. 112, § 1. In 1921, this statute was amended to change the deadline date to January 1, 1924. 1921 Wyo. Sess. Laws ch. 100, § 1. With that alteration,

the statute remains in effect today. Wyo. Stat. Ann. § 24-1-101(a) (LexisNexis 2009). The County Commissioners undertook to establish Bunker Road in 1913, but failed to record it. This statute imposed upon them the duty of rectifying that failure. Notably, this statute makes no distinction between roads acquired by eminent domain and those acquired by other means. Because this statute required the Bunker Road easement to be recorded, the ruling in *Meeker* is not controlling here.[1]

[¶ 38] Accordingly, I would reverse the district court's decision to dismiss the claims raised by the Kings and Hansen. I would remand to the district court with instructions to proceed to trial on the question of whether the Kings and Hansen are *bona fide* subsequent purchasers for value who took title to their properties without notice of the Bunker Road easement.

---

1. The *Meeker* decision does not discuss this statute.